⬧ EFILED IN OFFICE
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
**JO**
**MAY 26, 2022 03:36 PM**

Linda Dixon Thompson, Clerk
Liberty County, Georgia

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

| | |
|---|---|
| CATHERINE MOORE, as legal guardian and next friend of JONATHAN MOORE, | |
| Plaintiff, | Civil Action File No. |
| v. | **JURY TRIAL DEMANDED** |
| HISCOX, INC., HISCOX INSURANCE COMPANY INC., LLOYD'S AMERICA, INC., d/b/a Certain Underwriters at Lloyd's, London, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | |
| Defendants. | |

## COMPLAINT

Plaintiff Catherine Moore, as legal guardian and next friend of Jonathan Moore, brings this complaint against Hiscox, Inc., Hiscox Insurance Company Inc., Lloyd's America, Inc., d/b/a Certain Underwriters at Lloyd's, London, and Certain Underwriters at Lloyd's, London, showing as follows.

### INTRODUCTION

1. HealthCare Staffing, Inc. ("HCS") was insured under a Hiscox/Lloyd's liability policy when HCS's employee injured Plaintiff's grandson, Jonathan Moore.  Plaintiff gave HCS, Hiscox, and Lloyd's the opportunity to settle Jonathan's tort claims against HCS, but Hiscox and Lloyd's refused to settle and denied coverage.  Hiscox and Lloyd's further refused to provide a defense to HCS in Plaintiff's lawsuit against HCS.  Hiscox's and Lloyd's negligent and bad-faith failure to settle and breach of the duty to defend resulted in a judgment of $1,000,000.00, plus liability for attorney fees and litigation costs, against HCS.

### PARTIES, JURISDICTION AND VENUE

2.  The foregoing paragraphs are hereby incorporated by reference as if fully realleged herein.

3.  Plaintiff Catherine Moore is a resident of Georgia. Plaintiff submits to jurisdiction and venue in this Court.

4.  Jonathan Moore is Plaintiff's adult grandson.  Jonathan has severe autistic disorder and other intellectual disabilities.  Plaintiff has been appointed legal guardian of Jonathan by the Probate Court of Liberty County.  Plaintiff brings this action as Jonathan's legal guardian and next friend.

5.  Defendant Hiscox, Inc. is a corporation organized and existing under the laws of Delaware and with its corporate headquarters in Atlanta, Georgia.  Hiscox, Inc. is authorized to transact business in Georgia and is engaged in business as an insurance company in Georgia.  Hiscox, Inc. may be served with process by delivering a summons and copy of this Complaint to its registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.  Hiscox, Inc. is subject to jurisdiction in this Court.

6.  Defendant Hiscox Insurance Company Inc. is a corporation organized and existing under the laws of Illinois and with its corporate headquarters in Atlanta, Georgia.  Hiscox Insurance Company Inc. is authorized to transact business in Georgia and is engaged in business as an insurance company in Georgia.  Hiscox Insurance Company Inc. may be served with process by delivering a summons and copy of this Complaint to its registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.  Hiscox Insurance Company Inc. is subject to jurisdiction in this Court.

7. Defendants Hiscox, Inc. and Hiscox Insurance Company Inc. are referred to collectively herein as "Hiscox."

8. Defendant Lloyd's America, Inc., d/b/a Certain Underwriters at Lloyd's, London, is a corporation organized and existing under the laws of New York and with its southeast regional headquarters in Atlanta, Georgia. Lloyd's America, Inc., is authorized to transact business in Georgia and is engaged in the insurance business in Georgia. Lloyd's America, Inc., may be served with process by delivering a summons and copy of this Complaint to its registered agent for service of process, CT Corporation System, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia 30046.

9. Lloyd's America, Inc., is subject to personal jurisdiction in Georgia because it is and was at all relevant times authorized by the Secretary of State of Georgia to do or transact business in this State, and therefore is a resident of this State. In the alternative, Lloyd's America, Inc., is subject to personal jurisdiction in Georgia pursuant to O.C.G.A. § 9-10-91 because it transacts business in this state, it committed a tortious act or omission within this state, and/or it committed a tortious injury in this state caused by an act or omission outside this state. Lloyd's America, Inc., regularly does or solicits business, or engages in another persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia.

10. Certain Underwriters at Lloyd's, London ("Underwriters") is, upon information and belief, a wholly owned subsidiary of Hiscox Dedicated Corporate Member Limited of the United Kingdom. Underwriters is engaged in the insurance business in Georgia and has availed itself of the courts in Georgia, including by filing motions for relief in three underlying

related actions in this Court[1] and by filing an action against Plaintiff and others in federal court.[2]  Underwriters may be served with process by delivering a summons and copy of this Complaint to Lloyd's America, Inc., 280 Park Avenue, East Tower, 25th Floor, New York, New York 10017.

11. Underwriters is subject to personal jurisdiction in Georgia pursuant to O.C.G.A. § 9-10-91 because it transacts business in this state, it committed a tortious act or omission within this state, and/or it committed a tortious injury in this state caused by an act or omission outside this state.  Underwriters regularly does or solicits business, or engages in another persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia.

12. Defendants Lloyd's America, Inc., and Underwriters are referred to collectively herein as "Lloyd's."

13. Venue is proper in this Court pursuant to O.C.G.A. § 14-2-510(b) and O.C.G.A. § 9-10-93 because Plaintiff asserts a cause of action in tort that originated in Liberty County.

## FACTUAL ALLEGATIONS

14. The foregoing paragraphs are hereby incorporated by reference as if fully realleged herein.

15. At all times relevant to this Complaint, Jonathan was a patient of Gateway Behavioral Health Services, also known as the Gateway Community Service Board ("Gateway"), a legislatively created entity in coastal Georgia that serves individuals with developmental disabilities and other conditions.

---

[1] *Edenfield v. Healthcare Staffing, Inc.*, No. STSV2017000102 (motion filed Feb. 9, 2022); *Edwards v. Healthcare Staffing, Inc.*, No. STSV2018000028 (motion filed Feb. 9, 2022); *Moore v. Healthcare Staffing, Inc.*, No. STSV2018000030 (motion filed Feb. 9, 2022).
[2] *Certain Underwriters at Lloyd's, London Subscribing to Policy No. AH00000154-01 v. Edenfield, et al.*, No. CV422-035 (S.D. Ga. filed Feb. 4, 2022).

16. HCS is a Georgia staffing agency that supplies individuals to serve on the staffs of hospitals, nursing homes, long-term care facilities, and Community Service Boards in Georgia.

17. At all times relevant to this Complaint, HCS held a contract to supply staff members to Gateway.

18. At all times relevant to this Complaint, Errol Wilkins was an employee of HCS whom HCS had placed in an instructor/social aide position at Gateway.

19. At all times relevant to this Complaint, Jonathan was in the care, custody, and control of Gateway.

20. At no time did HCS or its employees have care, custody, or control of Jonathan.

21. On multiple occasions during the year 2015, through approximately August 5, 2015, Mr. Wilkins hit Jonathan with his fists, hands, and a wooden arm from a rocking chair.

22. On multiple occasions during the year 2015, through approximately August 5, 2015, Mr. Wilkins threatened, intimidated, and humiliated Jonathan.

23. No HCS employees reported Mr. Wilkins's conduct toward Jonathan to Adult Protective Services, the local police department, or any other governmental or law-enforcement agency.

24. On or about August 5, 2015, Plaintiff noticed large bruises on Jonathan's body.

25. Plaintiff reported the bruises to HCS employees on or about August 6, 2015, and told them that, due to distinctive jewelry marks in the bruises, she believed Mr. Wilkins had caused them.  However, the staff members denied her suspicions.

26. Gateway opened an internal investigation into Plaintiff's suspicions on or about August 6, 2015, but HCS's employees denied any knowledge of how the bruises had occurred.

27. The Hinesville Police Department opened an investigation on or about August 5, 2015, at Plaintiff's request, but no HCS staff members told the police that Mr. Wilkins had been striking Jonathan and other Gateway patients.

28. When Gateway received a report on or about February 27, 2016, that another patient had been abused and it investigated those allegations, multiple HCS employees on staff at Gateway finally admitted that they had observed Mr. Wilkins's wrongful conduct toward Jonathan and other patients.

29. Mr. Wilkins had a criminal history that included, at minimum, a conviction for robbery and charges for battery and armed robbery.

30. Mr. Wilkins's prior robbery conviction disqualified him from being on staff at Gateway due to regulations issued by the Georgia Department of Behavioral Health and Developmental Disabilities.

31. Jonathan suffered severe physical and mental injuries as a direct and proximate result of HCS's negligent failure to train Mr. Wilkins, negligent failure to train its other employees, negligent hiring of Mr. Wilkins, negligent hiring of its other employees, negligent retention of Mr. Wilkins, negligent retention of its other employees, negligent placement of Mr. Wilkins at Gateway, negligent placement of other employees at Gateway, negligent supervision of Mr. Wilkins, and/or negligent supervision of its other employees.

32. Jonathan was harmed not only by the negligent acts and omissions of Mr. Wilkins, but by the negligent acts and omissions of other HCS employees.

33. During at least the period from July 24, 2015, through July 24, 2016 (the "Coverage Period"), HCS was a named insured policyholder on a policy issued by Hiscox, policy

number AH00000154-01 ("the Policy"), which included both commercial general liability ("CGL") coverage and professional liability coverage.

34. On information and belief, Hiscox wrote and issued the Policy and formed the contractual relationship with HCS.

35. On information and belief, Hiscox and a syndicate of Lloyd's entered into a contract by which Hiscox would solicit business from potential insureds, write insurance policies, issue insurance policies, receive notices of claims from insureds and/or claimants, make coverage determinations, and otherwise act as the insureds' insurance company, while members of the Lloyd's syndicate would pay claims and/or defense costs for which Hiscox determined coverage existed under the policies written and issued by Hiscox.

36. Upon information and belief, all premiums paid by HCS with respect to the Policy were paid to Hiscox and Hiscox accepted the premiums from HCS for the Policy.

37. On information and belief, the contract between Hiscox and the Lloyd's syndicate embraced the Policy and the business/contractual relationship with HCS.

38. At all times material to the events described in this Complaint, Hiscox had a right to control Lloyd's activities with respect to defending and indemnifying its insureds.

39. Gateway was not an insured under the Policy.

40. At all times material hereto, the Policy had per-claim liability limits of $1,000,000.00 and an aggregate limit of $3,000,000.00 for its CGL coverage.

41. The CGL coverage was "occurrence form," meaning it applied to claims that arose within the Coverage Period.

42. At all times material hereto, the Policy had per-claim liability limits of $1,000,000.00 and an aggregate limit of $3,000,000.00 for its professional liability coverage.

43. The professional liability coverage was "claims made form," meaning it applied where notice of an actual or potential claim was received by HCS within the Coverage Period.

44. HCS was entitled to indemnity from Hiscox and/or Lloyd's under the CGL coverage for legal liability arising out of the events described above for injuries Jonathan suffered during the Coverage Period.

45. HCS was entitled to indemnity from Hiscox and/or Lloyd's under the professional liability coverage for legal liability arising out of the events described above where notice of Jonathan's actual or potential claim was received by HCS within the Coverage Period.

46. On or about November 13, 2017, Plaintiff's counsel sent a demand letter to HCS offering to resolve Jonathan's claims against it for $8,000,000.00.  (Ex. 1).

47. HCS promptly forwarded the demand letter to Hiscox.

48. On or about December 18, 2017, Hiscox sent a letter to HCS stating that it was denying coverage for Jonathan's claims against HCS. (Ex. 2 at 1).

49. In particular, Hiscox stated that Endorsement E9979.1, "CGL—Abuse or Molestation Exclusion," "applied to preclude coverage for this matter in its entirety" under the CGL part of the Policy because it excluded coverage for liability HCS might have for "Mr. Wilkins' conduct in abusing Mr. Moore based on its failure to properly screen or investigate Mr. Wilkins" and "fail[ure] to supervise Mr. Wilkins or report his conduct to the proper authorities."  (*Id.* at 2-3).

50. Endorsement E9979.1 reads as follows:

This insurance does not apply to "bodily injury" . . . arising out of:

    (a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
    (b) the negligent:
            (i)  employment;

     (ii)  investigation;
     (iii)  supervision;
     (iv)  reporting to the proper authorities, or failure so to report; or
     (v)  retention;
      of a person for whom any insured is or ever was legally responsible and
      whose conduct would be excluded by (a) above.

(Ex. 3).

51. Because Jonathan was never "in the care, custody or control of" HCS or any of its employees, paragraph (a) of Endorsement E9979.1 does not apply to his claims against HCS.

52. Paragraph (a) of Endorsement E9979.1 does not apply to any HCS employee who did not engage in "actual or threatened abuse or molestation" of Jonathan.

53. Because Jonathan was never "in the care, custody or control of" HCS or any of its employees, paragraph (a) of Endorsement E9979.1 would not exclude the conduct of anyone for whom HCS was legally responsible, and paragraph (b) does not apply to his claims against HCS.

54. Because the HCS employees who concealed or failed to disclose their knowledge of Mr. Wilkins's conduct did not engage in "the actual or threatened abuse or molestation . . . of any person," paragraph (b) of Endorsement E9979.1 does not apply to Jonathan's claims against HCS with respect to any of those employees.

55. Because the list of excluded activities in paragraph (b) of Endorsement E9979.1 does not include training, it does not apply to Jonathan's claims for negligent training of Mr. Wilkins or for negligent training of other employees.

56. Because the list of excluded activities in paragraph (b) of Endorsement E9979.1 does not include job placement, it does not apply to Jonathan's claims for negligence in placing Mr. Wilkins in a particular position on the staff at Gateway.

57. The Hiscox denial letter further acknowledged the demand identified claims that would come within the professional liability coverage, but it asserted that because Plaintiff did not send her demand letter until after the end of the Coverage Period, those claims were excluded from coverage.  (Ex. 2 at 3).

58. Because an in-house investigation of Plaintiff's allegations of abuse was conducted in August 2015, HCS, Hiscox, and Lloyd's had notice of Jonathan's potential claims within the Coverage Period.

59. Because Plaintiff filed a police report alleging abuse and the Hinesville Police Department conducted an investigation in August 2015, HCS, Hiscox, and Lloyd's had notice of Jonathan's potential claims within the Coverage Period.

60. Because an in-house investigation in February 2016 revealed evidence to support Plaintiff's allegations of abuse, HCS, Hiscox, and Lloyd's had notice of Jonathan's potential claims within the Coverage Period.

61. Plaintiff filed a lawsuit for damages on Jonathan's behalf on or about February 17, 2018, styled *Catherine Moore as Next of Kin and Legal Guardian of Jonathan Moore, an incapacitated adult, v. Healthcare Staffing, Inc. and Gateway Behavioral Health Services*, No. STSV2018000030, in the State Court of Liberty County ("the Tort Action") (Ex. 4).

62. The complaint in the Tort Action alleged claims against HCS not only regarding the negligence of Mr. Wilkins but regarding the negligence of other employees, negligent training of Wilkins, negligent training of other employees, negligent supervision of Mr. Wilkins, negligent supervision of other employees, negligent retention of Wilkins, breach of the staffing contract of which Jonathan was a third-party beneficiary, assault and battery, and fraud with respect to the other employees' concealment of Wilkins's conduct.

63. The complaint in the Tort Action alleged that Jonathan was a patient and business invitee of Gateway, not HCS, and that HCS placed Mr. Wilkins on the staff at Gateway pursuant to its staffing contract with Gateway.

64. The complaint in the Tort Action alleged that HCS should not have placed Wilkins in a position at Gateway that would involve contact with vulnerable persons such as Jonathan.

65. Some or all of the claims asserted by Plaintiff in the Tort Action were covered by the Policy.

66. On the face of the Complaint in the Tort Action, at least one claim at least arguably came within the coverage of the Policy.

67. HCS was entitled to a defense from Hiscox in the Tort Action.

68. HCS was entitled to a defense from Lloyd's in the Tort Action.

69. Hiscox refused to provide a defense to HCS in the Tort Action.

70. Lloyd's refused to provide a defense to HCS in the Tort Action.

71. HCS provided notice of Plaintiff's claims to Hiscox.

72. HCS tendered the defense of the Tort Action to Hiscox.

73. Hiscox did not pay HCS's defense costs in the Tort Action.

74. Lloyd's did not pay HCS's defense costs in the Tort Action.

75. Hiscox did not provide legal representation for HCS in the Tort Action.

76. Lloyd's did not provide legal representation for HCS in the Tort Action.

77. Hiscox had a duty to defend HCS in the Tort Action.

78. Lloyd's had a duty to defend HCS in the Tort Action.

79. Hiscox did not provide a defense for HCS in the Tort Action.

80. Lloyd's did not provide a defense for HCS in the Tort Action.

81. Hiscox never identified any basis for denying coverage or a defense in the Tort Action other than the grounds identified in the December 2017 denial letter.

82. Because Hiscox and Lloyd's denied coverage and a defense, HCS was forced to litigate the Tort Action at its own expense.

83. On or about March 18, 2019, Plaintiff served HCS with an Offer of Settlement for $250,000.00 pursuant to O.C.G.A. § 9-11-68. (*See* Ex. 5 at 2).

84. Hiscox did not tender the $250,000.00 demanded in the Offer of Settlement.

85. Lloyd's did not tender the $250,000.00 demanded in the offer of settlement.

86. Hiscox had a reasonable opportunity to settle Plaintiffs' tort claims and to protect HCS from a judgment in excess of policy limits.

87. Lloyd's had a reasonable opportunity to settle Plaintiff's tort claims and to protect HCS from a judgment in excess of policy limits.

88. Hiscox negligently, unreasonably, and in bad faith declined to take advantage of the opportunity to protect HCS from a judgment in excess of policy limits.

89. Lloyd's negligently, unreasonably, and in bad faith declined to take advantage of the opportunity to protect HCS from a judgment in excess of policy limits.

90. HCS withdrew its answer to Plaintiff's complaint on or about December 20, 2021, and went into default by operation of O.C.G.A. § 9-11-55.

91. The State Court of Liberty County held a prove-damages hearing on Plaintiff's tort claims on or about December 29, 2021, resulting in a judgment entered against HCS and in favor of Plaintiff on December 29, 2021, in the amount of $1,000,000.00.  (Ex. 6).

92. The judgment against HCS is final and accruing interest.

93. Because the final judgment was more than 125% greater than the amount in the Offer of Settlement, HCS also is liable for Plaintiff's attorney's fees and litigation costs incurred between March 18, 2019, and December 29, 2021.

94. The damages award and § 9-11-68 fees and costs combine to an amount in excess of the $1,000,000.00 limits of the Policy.

95. On or about January 5, 2022, Plaintiff sent a demand letter to Hiscox, notifying it that HCS had assigned Jonathan its rights and claims under the Policy and offering it the opportunity to resolve all claims against it and HCS by paying him the amount of the judgment plus the fees and costs owed under O.C.G.A. § 9-11-68.  (Ex. 5 at 8).

96. Hiscox rejected Plaintiff's demand.

97. Hiscox has a contractual duty to indemnify HCS for the judgment and to pay other amounts due under the Policy.

98. Lloyd's has a contractual duty to indemnify HCS for the judgment and to pay other amounts due under the Policy.

99. The judgment is the proximate result of Hiscox's and Lloyd's negligence and bad faith in failing to resolve the claims against HCS when they had a reasonable opportunity to do so.

100.    The judgment is the proximate result of Hiscox's and Lloyd's breach of the duty to defend.

101.    HCS has assigned to Plaintiff all of its assignable rights and claims against Hiscox and Lloyd's.  (Ex. 7).  Plaintiff sues Hiscox and Lloyd's as the assignee of HCS's causes of action.

102.    All conditions precedent to the right to bring this action have occurred or have been excused.

**COUNT I**

**NEGLIGENT AND BAD FAITH FAILURE TO SETTLE WITHIN POLICY LIMITS**

103.    The foregoing paragraphs are hereby incorporated by reference as if fully realleged herein.

104.    Hiscox and Lloyd's owed a duty to act with ordinary care and good faith when handling Plaintiff's claims against HCS.

105.    Under all the circumstances of this case, Plaintiff's claims in the Tort Action could and should have been settled by Hiscox and Lloyd's, had they acted with ordinary care and good faith and given equal consideration to the financial interests of their insured, HCS.

106.    Hiscox and Lloyd's had a reasonable opportunity to settle the claims against HCS within the limits of the Policy.

107.    Hiscox and Lloyd's breached their duties and were negligent by actions including but not limited to the following:

a.  Failing and refusing to settle Plaintiff's claims within the limits of the Policy when they had a reasonable opportunity to do so;

b.  Failing to give HCS's financial interests at least equal consideration with their own interests in the handling of Plaintiff's claims;

c.  Failing to settle Plaintiff's claims where HCS's liability was reasonably clear, the damages were in excess of the policy limits, and they were on notice that they had an opportunity to settle the case;

d.  Negligently and carelessly adjusting Plaintiff's claims;

e.  Failing to adopt and implement procedures for the prompt investigation and settlement of claims for losses such as Jonathan's; and/or

f.  Failing to handle the entire claim in accordance with applicable laws, statutes, governmental and industry regulations that establish obligations and standards of conduct for liability insurance companies handling claims, as well as with Hiscox's and Lloyd's own policies.

108.  As a proximate result of these breaches by Hiscox and Lloyd's, Plaintiff's claims did not settle within policy limits and a lawsuit was filed against its insured, HCS.

109.  As a proximate result of these breaches by Hiscox and Lloyd's, a judgment was entered against HCS.

110.  As a proximate result of these breaches by Hiscox and Lloyd's, HCS owes an amount to Plaintiff in excess of the policy limits.

111.  Hiscox and Lloyd's are liable to HCS for the full amount of the judgment plus § 9-11-68 fees and costs, interest, and other damages.

112.  Plaintiff is entitled to recover special damages in an amount to be determined by the enlightened conscience of the jury, including but not limited to the amount of the judgment, § 9-11-68 fees and costs, post-judgment interest, and other special and general damages for the foreseeable harm resulting from Hiscox's and Lloyd's actions.

## COUNT II

## BREACH OF CONTRACT

113.  The foregoing paragraphs are hereby incorporated by reference as if fully realleged herein.

114.  Hiscox and Lloyd's had a contractual duty under the Policy to defend HCS in the Tort Action.

115.    Hiscox and Lloyd's received prompt notice of the Tort Action, triggering the duty to defend.

116.    HCS fulfilled all conditions precedent for coverage under the Policy.

117.    Hiscox and Lloyd's denied coverage and a defense to HCS.

118.    Hiscox and Lloyd's breached the Policy by failing to defend HCS in the Tort Action.

119.    Hiscox's and Lloyd's failure to defend HCS is a direct and proximate cause of the judgment entered against HCS and other damages alleged herein.

120.    Alternatively, had Hiscox and Lloyd's provided a defense to HCS, the judgment would have been substantially less.

121.    Hiscox and Lloyd's are liable for their breaches of contract.

122.    Plaintiff is entitled to recover damages in an amount to be determined by the enlightened conscience of the jury for Hiscox's and Lloyd's breaches of the contractual obligations of the Policy.

## COUNT III

## CIVIL CONSPIRACY

123.    The foregoing paragraphs are hereby incorporated by reference as if fully realleged herein.

124.    Defendants combined and acted in concert to commit wrongful acts against Plaintiff.

125.    Defendants, positively or tacitly, arrived at a mutual understanding to accomplish the unlawful and wrongful design of denying insurance coverage for their insured, HCS, to the detriment of their insured and the Plaintiff, solely to advance the business and financial interests of all Defendants.

126.    Specifically, Defendants acted in concert to wrongfully and in bad faith:

a.  Fail and refuse to settle Plaintiff's claims within the limits of the Policy when they had a reasonable opportunity to do so;

b.  Fail to give HCS's financial interests at least equal consideration with their own interests in the handling of Plaintiff's claims;

c.  Fail to settle Plaintiff's claims where HCS's liability was reasonably clear, the damages were in excess of the policy limits, and they were on notice that they had an opportunity to settle the case;

d.  Negligently and carelessly adjust Plaintiff's claims;

e.  Fail to adopt and implement procedures for the prompt investigation and settlement of claims for losses such as those of the Plaintiff;

f.  Fail to handle the entire claim in accordance with applicable laws, statutes, governmental and industry regulations that establish obligations and standards of conduct for liability insurance companies handling claims, as well as with Defendants' own policies;

g.  Fail to consider information provided by Plaintiff and HCS regarding the nature of Plaintiff's tort claims against HCS;

h.  Fail to consider the substance and allegations in the complaint in the Tort Action regarding the fact that Jonathan was in the care, custody, and control of Gateway, not HCS;

i.  Fail to consider the substance and allegations in the complaint in the Tort Action regarding the fact that Plaintiff asserted claims regarding the conduct of HCS employees who had not engaged in actual or threatened abuse or molestation of Jonathan;

j.   Fail to consider the substance and allegations in the complaint in the Tort Action
regarding the fact that Plaintiff asserted claims regarding the negligent training of Mr.
Wilkins and other HCS employees;

k.   Fail to consider the substance and allegations in the complaint in the Tort Action
regarding the fact that Plaintiff asserted claims regarding the negligent placement of Mr.
Wilkins and other HCS employees on the staff at Gateway; and

l.   Fail to consider the substance and allegations in the complaint in the Tort Action
regarding the fact that HCS was put on notice of Plaintiff's potential claims during the
Coverage Period.

127.   By reasons of Defendants' concerted action and conspiracy to commit wrongful and
unlawful acts, or to commit lawful acts by unlawful means or methods, Defendants are
jointly and severally liable for the acts committed by each Defendant in furtherance of the
conspiracy.

128.   As a proximate result of these breaches by Defendants, Plaintiff's claims did not settle
within policy limits and a lawsuit was pursued against their insured, HCS.

129.   As a proximate result of these breaches by Defendants, a judgment was entered against
HCS.

130.   As a proximate result of these breaches by Defendants, a judgment was entered against
HCS in excess of the policy limits.

131.   Defendants are liable to HCS for the full amount of the judgment plus § 9-11-68 fees and
costs, interest, and other damages.

132.   Plaintiff is entitled to recover special damages in an amount to be determined by the
enlightened conscience of the jury, including but not limited to the amount of the judgment,

§ 9-11-68 fees and costs, post-judgment interest, and other special and general damages for the foreseeable harm resulting from Defendants' actions.

**COUNT IV**

**ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

133. The foregoing paragraphs are hereby incorporated by reference as if fully realleged herein.

134. Hiscox and Lloyd's have acted in bad faith, been stubbornly litigious, and have caused unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11.

135. Plaintiff is entitled to recover attorneys' fees and other expenses of litigation.

**WHEREFORE**, Plaintiff respectfully prays and demands as follows:

a. That service and process issue and that Defendants be served with process as required by law and that Defendants be required to appear and answer;

b. That Plaintiff receive a **TRIAL BY JURY**;

c. That judgment be entered against Defendants and in favor of Plaintiff;

d. That Plaintiff be awarded all special, compensatory, contractual, general, and other damages allowable by law and shown by the evidence;

e. That Plaintiff be awarded all attorneys' fees and expenses attributable to this action;

f. That costs be taxed against Defendants;

g. That Plaintiff be awarded pre-judgment interest; and

h. That Plaintiff receive all such other and further relief as this Court deems just and proper. This the 26th day of May, 2022.

**HARRIS LOWRY MANTON LLP**

 /s/ Jed D. Manton
JEFFREY R. HARRIS

Georgia Bar No. 330315
JED D. MANTON
Georgia Bar No. 868587
YVONNE S. GODFREY
Georgia Bar No. 318567
MADELINE E. McNEELEY
Georgia Bar No. 460652

1418 Dresden Dr. NE, Unit 250
Brookhaven, GA 30319
(404) 961-7650 (t)
(404) 961-7651 (f)
jeff@hlmlawfirm.com
jed@hlmlawfirm.com
yvonne@hlmlawfirm.com
molly@hlmlawfirm.com

*Attorneys for Plaintiffs*

# *THE WHITE LAW GROUP*

| | | |
|---|---|---|
| P.O. Box 787 | Office (912) 330-9733 | Physical Address: |
| Pooler, GA 31322 | Facsimile (912) 330-9755 | 130 Canal Street |
| dwhitelawfirm@yahoo.com | | Suite 501 |
| Of Counsel: | | Pooler, GA 31322 |
| *Patrick A. McWilliams* | | |
| (Licensed in GA & SC) | | |

November 13, 2017

**U.S. CERTIFIED MAIL**
**70162710000001303951**
HealthCare Staffing, Inc.
c/o Tracy L. Cameron
1724 Phoenix Parkway, Building 600
College Park, GA 30349

      RE:    Physical and Mental Abuse of Jonathan Moore
      DOI:   August 5, 2015 and before

Dear Sir or Madam:

      This letter to HealthCare Staffing, Inc. (hereinafter "HCS") is for the purpose of compromise discussions only and is our attempt, on behalf of our clients and with authority, to present the facts of their claims to you in hopes of reaching an expeditious and amicable resolution of this matter.

      This letter is being submitted to you for the purpose of compromise negotiations only and for no other purpose whatsoever. In the event that negotiations for the claims of the family fail, neither the original nor any copies of these materials may be used in any litigation to the detriment of the clients' claims or damages as a result of the subject incident.

      Also, this letter shall serve as a *Spoliation Letter*.

## PERSONAL HISTORY/INJURIES SUSTAINED

      Prior to August 05, 2015, when Mr. Moore would come home after his daily stay at the Liberty DDTC, Ms. Catherine Moore (Grandmother and Legal Guardian of Jonathan Moore) would notice wounds/bruises on Jonathan's body in various places and that Jonathan was withdrawn. On August 05, 2015, Ms. Moore arrived at the Liberty DDTC to pick up Jonathan. As she arrived, she noticed Jonathan frantically running outside of the building. No one did or could explain to her why or how Jonathan got out. None of your employees at Gateway informed Ms. Moore that her grandson had been and was being physically abused daily at the

1 | P a g e

PLAINTIFF'S
EXHIBIT

1

hands of Errol Wilkins.

That night while bathing Jonathan, Ms. Moore noticed large bruises on Jonathan's arm. The next day she showed the bruises to staff members. Again, none of your employees at Gateway informed Ms. Moore that her grandson was being physically abused daily at the hands of Errol Wilkins.

As importantly, Ms. Moore filed a police report with the Hinesville Police Department concerning the bruises. And, despite federal, state, and corporate laws, regulations and policies none of your employees informed the Hinesville Police Department that Jonathan was being physically abused daily at the hands of Errol Wilkins. This failure to report physical abuse at the hands of your employees, particularly Errol Wilkins, had become established and regularly followed protocol for your employees.

Moreover, Ms. Moore specifically informed your employees that Errol Wilkins was the person she knew to the abuser. Irrespective of Ms. Moore's accurate information, your employees intentionally hid the truth from Ms. Moore and never informed her that she was correct or that her grandson was being abused by Errol Wilkins.

Finally, and in no uncertain terms, your employees intentionally committed fraud upon Ms. Moore and allowed Errol Wilkins to continue his abuse of other your clients' patients such as Adam Edwards, Quincy Edenfield, and Lee Green. It is clear that you and your employees, as a means of controlling defenseless people, have engaged in a pattern of physically abusing clients who cannot speak for or defend themselves.

The truth was finally revealed to Ms. Moore by happenstance in August of this year when a friend of hers informed Ms. Moore of Cheryl's Edenfield's lawsuit against Gateway.

**IN-HOUSE INVESTIGATION**

As result of Ms. Moore complaining about the wounds and bruises she saw on her grandson, an investigation was launched and conducted by Amanda Tillman, Gateway QM Director, on August 06, 2015. Ms. Tillman had Deborah Jones ask staff members if they knew what happened. All asked claimed they had no knowledge as to how the bruises occurred. These responses were in line with the modus operandi of no one reporting Errol Wilkins' physical and verbal abuse of clients.

Also, Ms. Moore returned with Jonathan on August 06, 2015. However, Jonathan would not enter the premises. He was scared, trembling, and shaking so badly that Ms. Moore had to take Jonathan home. Jonathan has not returned since his last stay of August 05, 2015 because of his trepidation of Errol Wilkins and Ms. Moore's well placed untrust of your employees unwillingness to disclose what is truly happening behind closed doors.

## POLICE INVESTIGATION

On August 05, 2015, Officer Robert Smith was dispatched to the Moore's residence. Upon arrival he was informed of Ms. Moore's findings. Officer Smith noticed "there were at least two bruises where it appeared Jonathan's arm was grabbed."

## EVALUATION

Based upon the above facts and the investigations as a whole, it is clear that Errol Wilkins was allowed to physically abuse individuals and Jonathan with impunity. It is equally as clear that you and your employees were well aware of Errol Wilkins' tyranny and took absolutely no corrective actions. Instead, the individuals to be protected were the least protected and the ones to do the protecting were the least to protect.

The draconian antics of Errol Wilkins and the subsequent ratification by you and your employees are unfathomable and cannot and will not be tolerated nor without consequence. Not to mention, you were acutely aware of Mr. Wilkins' Criminal background. It is a background replete with violent crimes, **including Armed Robbery**! In fact, Dr. Johnson, CEO of Gateway, testified under oath on October 13, 2017 this type of criminal history is not associated with the people to be hired to work at Gateway.

HSC prides itself on its professionalism and ability to provide the highest qualified staff to its clients. A few of your self-serving promoting statements:

**Our outsourcing projects include every aspect of employment for healthcare providers:**

- Customized credentialing for client specific credentials
- Comprehensive benefits plans
- Payroll management
- On-site or local project management
- Recruiting and retention of employees
- Management of employees

**Before placement, HCS develops a profile of each health care practitioner based on:**

- Skill levels
- Licenses and certifications
- Customized screening checks
- Medicare/Medicaid sanction checks
- Competency exams
- Drug testing
- Criminal background checks
- Education and experience

Whether the need is for outsourcing, daily staffing or a contract assignment of several

months, HCS ensures that skilled and reliable nurses and allied healthcare professionals can begin working as soon as necessary. From placement to billing, the process for medical facilities is clear and simple. HCS takes care of all the details, including payroll, benefits, travel assistance, housing accommodations and more.
Our customized staffing management services are designed to meet your individual needs.

**Range of Services HCS provides**

In addition to one of the strongest credentialing program available, Healthcare Staffing offers our Clients a complete range of services for the Healthcare Providers we represent:

- Complete pre-hire credentialing packages
- Coordination of the entire process from job search through end of assignment
- HCS staff on duty 24/7/365
- Complete Insurance program with high limits
- Security of doing business with an employee based agency
- Weekly or Monthly billing
- Annual Joint Commission training for Healthcare Providers
- Annual HIPAA training for Healthcare Providers
- Customized credentials to your requirements
- Written confirmation of assignments
- Same day response to complaints, grievances, and incidents
- Exceptional customer service

**Key Components of Our Process**

Healthcare Staffing Provides our clients with custom designed vendor on-premise and outsourcing programs to meet their specific needs. HCS understands that each client is unique and so are their individual needs for their organization. We approach each client's vendor on-premise and outsourcing program to meet each client's particular situation.  With each client, our process is custom and designed to:

- **Lower Administrative Burden**
- **Improving Operational Efficiencies**
- **Compliance with Client Policy and Guidelines**
- **Lower Cost**
- **Competitively Price Supplemental Staff**
- **Be an On-Premise Resource**

How is it possible that you claim to provide all of these services with the "**best skilled and reliable nurses and allied healthcare professionals**" in the industry yet your "**reliable**" staff allowed Jonathan and two (2) others - all who are defenseless, mentally challenged people - to be subjected to beatings weekly with wooden weapons wielded by a weathered gang member! Better still, how will you explain this to a jury?

Due to the severe physical and mental damages (past, present and future) suffered by Jonathan and HCS's intentional reluctancy to inform Ms. Moore of the physical abuse upon Jonathan inflicted at the hands of your employee, Errol Wilkins, I am hereby making a demand of **Eight million ($8,000,000.00) dollars** to resolve any and all claims that my clients have a legal right to pursue in the court systems of this state. This demand is made for payment of the demanded amount for (1) the pure Hell Jonathan had to endure as HCS allowed and sat idly by and observed Jonathan's suffering with apathetic hearts and minds; for (2) the institutionalized silence of HCS's and its employee when beatings occur to the defenseless; for (3) HCS's fraudulent actions in lying to Ms. Moore as to how Jonathan's bruises occurred; (4) HCS's lack of empathy was for the very person who could not speak for himself, fight for himself, or even plead for mercy for himself; and (5) HSC's failure to report the physical abuse of Jonathan pursuant to federal laws and regulations, state laws and regulations, and corporate policies.

The very person HCS signed a contract with Gateway and the State of Georgia to speak for, to fight for, to have mercy and love upon - Jonathan - HCS silenced, fought against, and was merciless in their treatment of Jonathan!

Additionally, this demand includes compensatory damages for pain and suffering, and special damages for medical expenses. It also includes punitive damages which will be sought at trial if this matter is not resolved. This demand is made pursuant to Smoot v. State Farm as well as the Georgia Unliquidated Damages Interest Act (OCGA §51-12-14), which entitles our client to interest at the current annual prime rate as published by the Board of Governors of the Federal Reserve System on the thirtieth day following the date of the mailing of this written notice plus 3 percent if it is not paid within thirty days. Additionally, this letter is being sent pursuant to OCGA § 13-6-11, "Recovery of Expenses of Litigation Generally."

Finally, the demand for payment as satisfaction of all claims is additionally made pursuant to Holt v. Southern Guaranty. As you are aware, that case specifically found that ten (10) days was a sufficient period of time for the defendant and insurer to evaluate the claim and tender its policy limits or the demanded amount, whichever is greater. Therefore, please inform your insurance carrier of this claim. Otherwise, you may be held personally liable for any verdict we may obtain. And, if we obtain a verdict in excessive of your policy limits, we will take every legal means to collect every cent of the verdict. Thus, allow this correspondence to serve as our notice for you to preserve all assets as of this date. You are hereby put on notice not to transfer, sell, release, discharge, exchange or otherwise encumber any assets you have as a corporation.

Not only have I provided you with ample information to evaluate this claim, both on liability and damages, you have the actual knowledge of the facts and events surrounding the abuse of Adam as elucidated in Ms. Tillman's investigative report of August 6, 2016. Pursuant to Holt v. Southern Guaranty, I will expect a response to this demand package within ten (10) days. Thereafter, the demand will be firm.

Thank you for your attention to this matter.

Yours very truly,

Derek J. White

DJW/mw
enc
cc:      Richard Rector, Executive Director for Healthcare Staffing, Inc.



December 18, 2017

**Via Email and Certified Mail.**
**Return Receipt Requested**

Lisa Matthews
HealthCare Staffing, Inc.
1724 Phoenix Parkway
College Park, GA 30349

## Coverage Declination

Re:     Notice of Claim: Jonathan Moore

| | |
|---|---|
| Hiscox Insured: | HealthCare Staffing, Inc. |
| Policy No.: | AH00000154-01 |
| Policy Limit: | $1M per claim/$3M aggregate |
| Policy Period: | July 24, 2015 to July 24, 2016 |
| Claim No.: | 103001829 |

Dear Ms. Matthews:

Certain Underwriters at Lloyd's London ("Hiscox") has recently been made aware of an attorney letter sent to HealthCare Staffing, Inc. ("HCS") dated November 13, 2017 on behalf of Jonathan Moore ("Mr. Moore"). It is our understanding that HCS seeks coverage for this claim under the above-referenced policy of insurance.

Based on Hiscox's understanding of the facts to date, Hiscox must respectfully advise you that there is no coverage available for HCS under the Hiscox Policy. Hiscox offers the following additional detail regarding the coverage declination, and reserves its rights as follows.

## 1.     Factual Background[1]

This matter arises out of alleged abuse of a mentally challenged 28 year old man at a Georgia developmental disabilities training center. According to the attorney letter dated November 13, 2017 (the "Attorney Letter"), Mr. Moore was enrolled in a day program operated by Gateway Behavioral Health Services ("Gateway"). On August 5, 2015, Mr. Moore's grandmother arrived to pick him up and found him running outside the building. When she bathed him that evening, she allegedly noticed large bruises on his arm. She reported the bruises to Gateway staff the next day, and Mr. Moore never returned to the program. The Attorney Letter further alleges the staff intentionally concealed the fact that Gateway employee Errol Wilkins had been regularly beating Mr. Moore. She claims she discovered Mr. Wilkins' identity when she learned of a lawsuit filed against Gateway by another client.

The Attorney Letter contends that Mr. Moore had been the victim of abuse at the program prior to August 5, 2015, and that Mr. Wilkins had an extensive criminal history that HCS should have discovered. It claims that HCS, as a staffing agency, provided a criminal to Gateway to work with mentally challenged people. It further alleges that HCS failed to inform Mr. Moore's grandmother of the ongoing physical abuse and

---

[1] Hiscox recognizes that the allegations in the Attorney Letter are unsubstantiated, and summarizes those allegations herein for the purposes of evaluating coverage only, and without accepting them or implying that they have any merit.

Hiscox
104 S Michigan Ave, Suite 600
Chicago, IL 60603

T +1 312 283 2931
F +1 312 228 8077
jared.gamm@hiscox.com
www.hiscox.com

PLAINTIFF'S
EXHIBIT
2

failed to report the abuse to government authorities. The Attorney Letter seeks $8 million in compensatory and punitive damages.

## 2. The Policy

Hiscox issued a commercial liability policy, number AH00000154-01, to "HealthCare Staffing, Inc. and Public Service Staffing, LLC" for the policy period July 24, 2015 to July 24, 2016 (the "Hiscox Policy").The Hiscox Policy has a commercial general liability coverage section with a $1 million limit each claim and a professional liability coverage section with a $1 million limit each claim. There is a $3 million aggregate limit for all claims. Both coverage sections have a $5,000 self-insured retention.

## 3. Coverage Position

### a. Commercial General Liability Coverage Section

The commercial general liability section of the Hiscox Policy affords coverage for liability for "bodily injury" caused by an "occurrence" during the policy period. The Attorney Letter alleges that HCS acted intentionally to conceal the ongoing abuse at Gateway. Please be advised that intentional acts are not "occurrences" under the Hiscox Policy.

While Hiscox acknowledges that the Attorney Letter alleges that Mr. Moore suffered "bodily injury" on August 5, 2015, there is no coverage for any bodily injury which may have occurred prior to July 24, 2015. It is our understanding that Mr. Moore was a Gateway client from April 28, 2009 through August 5, 2015. Any liability for bodily injury that may have occurred between April 28, 2009 and July 24, 2015 would not be covered by the Hiscox Policy.

Moreover, please be advised that the Hiscox Policy contains the following exclusion which applies to preclude coverage for this matter in its entirety:

#### E.9979.1 CGL – Abuse or Molestation Exclusion

This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "advertising injury" or "personal injury" arising out of:

(a)  the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(b)  the negligent:

    (i)  employment;

    (ii)  investigation;

    (iii)  supervision;

    (iv)  reporting to the proper authorities, or failure to so report; or

    (v)  retention;

Hiscox
104 S Michigan Ave, Suite 600
Chicago, IL 60603

T +1 312 283 2931
F +1 312 228 8077
jared.gamm@hiscox.com
www.hiscox.com

> Of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

The Attorney Letter alleges that HCS is legally responsible for Mr. Wilkins' conduct in abusing Mr. Moore based on its failure to properly screen or investigate Mr. Wilkins. The Attorney Letter also alleges HCS failed to supervise Mr. Wilkins or report his conduct to the proper authorities. As all of the allegations in the Attorney Letter are precluded by this exclusion, Hiscox must respectfully deny coverage under the commercial general liability coverage section.

### b. Professional Liability Coverage Section

Next, the professional liability section of the Hiscox Policy affords coverage for "damages" that the insured becomes legally obligated to pay as a result of any covered "claim" that is first made against the insured during the policy period, for any "wrongful act" by the insured or by anyone for whom the insured is legally responsible. The term "wrongful act" is defined to mean "any actual or alleged negligent act, error, omission, breach of duty, 'bodily injury' or 'personal injury' committed or alleged to have been committed solely in the performance of the 'professional services' as shown in Item 3. of the Declarations." HCS' "professional services" are "solely in the performance of services as a healthcare & professional staffing agency."

Hiscox acknowledges that the Attorney Letter alleges a "wrongful act" by HCS, as that term is defined by the Hiscox Policy. However, the Attorney Letter is a "claim" that was first made on November 13, 2017, several years after the Hiscox Policy expired. As the "claim" was not first made during the Hiscox Policy period, Hiscox must respectfully deny any obligation to defend or indemnify HCS with respect to this matter.

Finally, Hiscox notes that the Attorney Letter seeks to recover compensatory damages, exemplary/punitive damages and attorney's fees. The definition of "damages" specifically excludes punitive or exemplary damages unless insurable under applicable law. Where such damages are insurable, the maximum amount Hiscox will pay is $250,000 as a part of, and not in addition to, the coverage limit. Hiscox reserves all rights in this regard.

## 4. Conclusion

Hiscox respectfully denies coverage for this matter for the reasons set forth above. Hiscox also reserves its rights under all other terms, conditions, exclusions and endorsements in the Hiscox Policy, as well as at law. Nothing contained in this letter, and no action on our part in investigating this matter, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to Hiscox.

The foregoing statement of Hiscox's position reserving rights with respect to the above-mentioned matter is based on Hiscox's investigation and documents that have been provided to date. If you are aware of any additional information that would require re-evaluation of Hiscox's position, we would ask that you please provide it to us immediately.

We hope this letter was helpful in identifying for you the potential coverage issues for this claim. If you have any questions, or disagree with any aspect of the foregoing position or analysis, please do not hesitate to contact the undersigned right away.

Hiscox
104 S Michigan Ave, Suite 600
Chicago, IL 60603

T +1 312 283 2931
F +1 312 228 8077
jared.gamm@hiscox.com
www.hiscox.com

Page 4

Kind regards,

Jared Gamm
Associate Claims Counsel

cc:    June Hancock Strickland
       The Assured Group, LLC
       4355 J Cobb Pkwy, Suite 506
       Atlanta, GA 30339
       June@assuredgroupins.com

Hiscox
104 S Michigan Ave, Suite 600
Chicago, IL 60603

T +1 312 283 2931
F +1 312 228 8077
jared.gamm@hiscox.com
www.hiscox.com



## E9979.1 CGL- Abuse or Molestation Exclusion

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," advertising injury" or "personal injury" arising out of:

(a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(b) the negligent:
  (i)    employment;
  (ii)   investigation;
  (iii)  supervision;
  (iv)   reporting to the proper authorities, or failure to so report; or
  (v)    retention;
  of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

All other terms and conditions remain unchanged.

**PLAINTIFF'S EXHIBIT**
3

EFILED IN OFFICE
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

STSV2018000030
JO
FEB 17, 2018 11:33 AM

Linda Dixon Thompson, Clerk
Liberty County, Georgia

## IN THE STATE COURT OF LIBERTY COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CATHERINE MOORE** As Next of Kin and | : | |
| As Legal Guardian of **JONATHAN MOORE**, | : | |
| An incapacitated Adult, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO.: |
| | : | |
| v. | : | |
| | : | |
| **HEALTHCARE STAFFING, INC.** and | : | |
| **GATEWAY BEHAVIORAL HEALTH** | : | |
| **SERVICES**, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

**COME NOW,** plaintiffs and respectfully show this Honorable Court the following in

support of their claims:

### PARTIES DEFENDANT

1.

Defendant Healthcare Staffing, Inc. (hereinafter "Staffing") has its Principal Place of

Business at 1724 Phoenix Parkway, College Park, GA 30349 and is subject to the jurisdiction

and venue of this Court pursuant to OCGA §14-3-510(b)(4).

2.

Please serve Defendant Staffing by and through its Registered Agent for Service, Tracy

L. Cameron, at 1724 Phoenix Parkway, Building 600, College Park, GA 30349 through the

Sheriff of Clayton County.

3.

Defendant Gateway Behavioral Health Services (hereinafter "Gateway") has its places of

PLAINTIFF'S
EXHIBIT
4

operation at 1113 E Oglethorpe Hwy #84, Hinesville, GA 31313 and 760 South Main Street,

Hinesville, GA 31313 and is therefore subject to the jurisdiction and venue of this Court pursuant

to OCGA §37-2-11.1(a) and as a joint tortfeasor.

4.

Please serve Gateway by and through its Chief Executive Officer, Dr. Mark Johnson, at

600 Coastal Village Drive, Brunswick, GA 31520 through the Sheriff of Glynn County.

5.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to

provide Defendant Gateway with competent employees who would treat Defendant Gateway's

patients with "high quality customer service focused on outcomes of improved health."

5a.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to

provide Defendant Gateway with competent employees who would treat Defendant Gateway's

patients with "service with integrity in a culturally competent, ethical and respectful manner."

5b.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to

provide Defendant Gateway with competent employees who would treat Defendant Gateway's

patients with "consistent treatment, providing strengths-based care, focused on an individual's

personal goals."

5c.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to

provide Defendant Gateway with competent employees who would treat Defendant Gateway's

patients with "a work environment that encourages passion, creativity, and team work in an

atmosphere of compassion, flexibility and optimism."

5d.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to provide Defendant Gateway with competent employees who would treat Defendant Gateway's patients with an environment which fostered "hope to all individuals served."

5e.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to provide Defendant Gateway with competent employees who would treat Defendant Gateway's patients "humanely."

5f.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to provide Defendant Gateway with competent and properly screened employees.

5g.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation perform a criminal background check on all employees to be provided to Defendant Gateway.

5h.

At all times pertinent to this lawsuit, Defendant Staffing had a contractual obligation to perform a ten (10) point drug screen on all employees to be provided to Defendant Gateway.

6.

At all times pertinent to this lawsuit, Defendant Gateway had a contractual obligation to provide Mr. Jonathan Moore (hereinafter "Jonathan") with a safe and secure environment in which to provide Jonathan with "high quality customer service focused on outcomes of improved health."

6a.

At all times pertinent to this lawsuit, Defendant Gateway had a contractual obligation to provide Jonathan with a safe and secure environment in which to provide Jonathan with "service with integrity in a culturally competent, ethical and respectful manner."

6b.

At all times pertinent to this lawsuit, Defendant Gateway had a contractual obligation to provide Jonathan with a safe and secure environment in which to provide Jonathan with "consistent treatment, providing strengths-based care, focused on an individual's personal goals."

6c.

At all times pertinent to this lawsuit, Defendant Gateway had a contractual obligation to provide Jonathan with a safe and secure environment in which to provide Jonathan with "a work environment that encourages passion, creativity, and team work in an atmosphere of compassion, flexibility and optimism."

6d.

At all times pertinent to this lawsuit, Defendant Gateway had a contractual obligation to provide Jonathan with a safe and secure environment in which to provide Jonathan with "hope to all individuals served."

6e.

At all times pertinent to this lawsuit, Defendant Gateway, as owner of the premises where Jonathan was abused, had a legal obligation to provide all invitees with a safe and secure environment in which to participate in Defendant Gateway's programs and treatments.

6f.

At all times pertinent to this lawsuit, Jonathan was an invitee of Defendant Gateway.

6g.

Defendant Gateway's Mission statement is:

> We provide hope for recovery to individuals with mental illness,
>
> addictive diseases, and developmental disabilities.

## PARTIES PLAINTIFF

7.

Ms. Moore is the Legal Guardian of Jonathan Moore.  Jonathan is an Incapacitated Adult suffering from Severe Autistic Disorder and Unspecified Intellectual Disabilities and resides with Ms. Moore.

## CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES

8.

The Defendants entered a contract with one another for the purpose of providing services to Defendant Gateway's patients.

8a.

Jonathan is a patient of Gateway's and is a third party beneficiary of the contract between Defendants.

8b.

Defendants both had employees who provided services to Jonathan.

8c.

Particularly, Defendant Staffing lent Errol Wilkins to Defendant Gateway to provide services to Jonathan and other patients of Defendant Gateway.

8d.

Particularly, Defendant Gateway allowed Errol Wilkins to provided services to Jonathan and other patients.

8e.

Jonathan was an invitee of Defendant Gateway.

9.

Particularly, Defendants jointly and continuously allowed Errol Wilkins to physically and mentally abuse Jonathan.

9a.

Particularly, Defendants jointly and continuously hid the abuse of Jonathan from Ms. Moore.

9b.

Ms. Moore informed Gateway that she believed that Errol Wilkins was abusing Jonathan.

9c.

Gateway, through its staff members, denied that Errol Wilkins was abusing Jonathan.

9d.

In August of 2017, Ms. Moore fortuitously learned of the abuse of Jonathan through a mutual friend who informed her of a lawsuit filed by Cheryl Edenfield concerning the abuse of her son at the hands of Errol Wilkins.

## FACTS OF THE SUBJECT OCCURENCES
## OF PHYSICAL ABUSE OF JONATHAN MOORE

10.

Plaintiffs allege all preceding and subsequent paragraphs herein as if pled as this paragraph.

11.

Throughout the year of 2015 when Jonathan would come home after his daily stay at the Liberty DDTC (Gateway's facility where the events of this action arose), Ms. Moore would notice wounds/bruises on Jonathan's body in various places and that Jonathan was withdrawn.

11a.

On August 5, 2015, Ms. Moore arrived at the Liberty DDTC to pick up Jonathan.

11b.

As Ms. Moore arrived, she noticed Jonathan frantically running outside of the building.

11c.

No staff member/employee of the Defendants could explain to Ms. Moore why or how Jonathan got out.

11d.

No staff member/employee of the Defendants informed Ms. Moore that her grandson had been and was being physically abused daily at the hands of Errol Wilkins.

12.

The night of August 5, 2015, while bathing Jonathan, Ms. Moore noticed large bruises on Jonathan's arm.

12a.

The next day Ms. Moore showed the bruises to staff members.

12b.

Again, no staff member/employee of the Defendants informed Ms. Moore that Jonathan was being physically abused daily at the hands of Errol Wilkins.

12c.

However, Ms. Moore informed staff members that she believed that it was Errol Wilkins because of the jewelry he was wearing that marks on Jonathan's body.

12d.

Staff members/employees of the Defendant denied Ms. Moore suspicion and never informed her that she was correct that Errol Wilkins was abusing Jonathan, as well as other individuals such as Quincy Edenfield, Lee Green, and Adam Edwards.

13.

Ms. Moore filed a police report with the Hinesville Police Department concerning the bruises.

13a.

Despite federal, state, and corporate laws, regulations, and policies requiring the reporting of physical abuse, no one at Gateway informed the Hinesville Police Department that Jonathan was being physically abused daily at the hands of Errol Wilkins.

14.

This failure to report physical abuse at the hands of staff members, particularly Errol Wilkins, had become an established and regularly followed protocol for Gateway staff members.

15.

However, on February 27, 2016, Ms. Rosetta Scott, a Gateway Instructor and Staffing employee, informed Ms. Deborah Jones, a Gateway employee, that she saw Mr. Errol Wilkins, a Gateway Instructor and Staffing employee, hitting Jonathan as well as another individual.

16.

As a result of Ms. Scott's report of the abusive tactics of Mr. Wilkins, an investigation

was launched on February 29, 2016 by Mr. Mitch Sweeney, Gateway QM Coordinator.

17.

Mr. Sweeney devised a chronology of the incident and spoke with several employees of Gateway.

18.

Mr. Sweeney concluded:

> Based on interviews, the allegations of physical abuse is ***substantiated*** against
> Mr. Errol Wilkins.  Several staff and individuals stated that they have observed
> Mr. Wilkins hit Jonathan [Moore] with his fist and/or open hand on several
> occasions and that this ***has been going on for several weeks***.  It has also been
> observed that Mr. Wilkins has often hit/punched [Jonathan] individual, who
> Wilkins is 1:1 with, in the back of the head when he accidentally soils himself.
> Verbal abuse has also been substantiated by witnesses who have heard Mr.
> Wilkins threaten, intimidate, and humiliate individuals at the training center.
> (Emphasis in original and added.).

19.

Mr. Sweeney then recommended the following:

i.      Terminate employment with Mr. Wilkins.

ii.     Cooperate with the Police Department on Criminal Investigation.

iii.    Root Cause Analysis to be done with training center staff to determine

underlying reason for not reporting incident timely and take appropriate action with staff

involved.

## CRITICAL FACTS OF INVESTIGATION

### 20.

Plaintiffs hereby adopt and allege all preceding and succeeding paragraphs herein as this paragraph.

### 21.

Although the investigation report is attached, several facts need to be highlighted (which are verbatim from the report):

Ms. Rosetta Scott stated in her interview:

a.      All of us have seen it . . . . . people higher up than me such as Instructor IIs.

b.      I thought someone else had reported.

c.      I saw Errol hit [Adam] in the side of the head at the ear with a closed fist.

d.      That was the last straw.

e.      We've asked Errol to help get [Quincy] and Adam back in the classroom.  He then hits them.

f.      I've seen him hit them both with a closed fist on multiple times.

g.      At least 2-3 times a week, sometimes 2x per day.

h.      Errol is a former gang member from Chicago and we're a little afraid of him retaliating.  That is the main reason I did not report it before.

i.      This has been going on for about 3 months.  I believe it started in December.

j.      I couldn't take it anymore and it caused me anxiety.

k.      Everyone that works in the back has seen it.  If they say they didn't, then they are lying.

l.      They don't write him up.

m.      If I were to do what he does, I would get written up.

22.

An unidentified individual stated in his/her interview:

a.      Both [Quincy] and Adam, he be hitting them beside the head.  Sometimes with his

fist or a broke off handle from a rocking chair.

b.      He punches [Quincy] and Adam.

c.      I've told Robert Brown, but he doesn't want me to get involved.

d.      Errol will say keep your ass in the chair . . . . if you move, I'll knock you out.

e.      Errol don't care about anybody but himself.

23.

Another unidentified individual states the following during his/her interview:

a.      Sometimes he hits [Quincy] and Adam.

b.      He hits them in the arms or side.

c.      It has been happening a while . . . happened last week.

24.

Rose Palmer, Instructor I, stated:

a.      I have seen Errol hit them, and hits them with an open hand.

b.      ***I know it's not acceptable***.  (Emphasis added.).

c.      I've told him don't do that . . . as long as they're inside . . . if they were outside

then that is when you should be concerned.

d.      Never should you push, shove, or hit anyone inside or outside.

e.      I saw him do it only once . . .  back in January.

25.

Faye Hines, Instructor I, stated in her interview:

      a.     ***Errol hitting happens throughout the week*** . . . 2-3 x a week, can be multiple times a day.  (Emphasis added.).

      b.     ***Adam or [Quincy] 'draw up' their arms to protect themselves or run if Errol comes towards them***.  (Emphasis added.).

      c.     I've seen Errol hit Adam & [Quincy] with a closed fist in their sides.

      d.     He has hit [Adam] in the head with his fist.

      e.     **It happens often**.  (Emphasis added.).

      f.     I didn't report it because I thought someone else had.

      g.     ***Everyone has seen it and I heard Errol had been spoken to about this***.
(Emphasis added.).

      h.     I don't remember who told me that he had been spoken to as it was ***a long time ago***. (Emphasis added.).

      i.     ***Its just been a matter of time that Errol got in trouble for this***.  (Emphasis added.).

      j.     ***I used to tell Errol not to do this and don't bother them***.  (Emphasis added.).

      k.     Everyone saw it happen and may not have wanted to get involved.

      l.     The first time I saw it was a couple of months ago.

      m.     They may not have wanted to get involved and could have been afraid.

      n.     Afraid of what Errol would do.

26.

Cheryl Bailey, Instructor I, stated in her interview:

      a.     Errol has been very physical mainly with [Quincy], hitting him with a closed fist in the ear area.

      b.     I've seen him hit with a closed fist even with jewelry on.

      c.     ***A lot of other staff see it happen and don't say anything***.  (Emphasis added.).

      d.     Also, he has hit Adam with a closed fist.

      e.     It happens mainly in the warehouse, but sometimes in the day room.

      f.     ***It's been going on for a month or two***.  (Emphasis added.).

      g.     ***He has been warned***.  (Emphasis added.).

      h.     I and other staff ***have warned him*** that he was going to get caught.  (Emphasis added.).

      i.     He picks on them ***and calls them names***.  (Emphasis added.).

      j.     ***It happens several times a week and sometimes multiple times a day***.  (Emphasis added.).

      k.     He's from Chicago and says he was in a gang.

27.

Errol Wilkins, Instructor I, stated the following:

      a.     We aren't allowed to hit them.

      b.     I put my ***hand on their shoulder*** & wrist to help them sit down.  (Emphasis added.).

      c.     ***I may not want to help the ladies in the future if this happens***.  (Emphasis added.).

      d.     I've never pushed, shoved, or hit them.

## COUNT ONE
## FAILURE TO TRAIN AND SUPERVISE AN EMPLOYEE

28.

Plaintiffs hereby adopt and allege all preceding and succeeding paragraphs herein as this paragraph.

29.

Defendant failed to train and supervise Errol Wilkins, and others, in the proper manner for assisting the clientele of Gateway, particularly Adam.

30.

Defendant failed to train and supervise Errol Wilkins, and others, in reporting physical abuse of Gateway's clientele by Defendant's employees, particularly the abuse of Jonathan at the hands of Errol Wilkins.

31.

Defendant failed to train and supervise Errol Wilkins, and others, in properly maintaining a safe and secure environment for Gateway's clientele, particularly Jonathan.

32.

Defendant failed to train and supervise Errol Wilkins, and others, in providing Humane Treatment of Gateway's clientele, particularly Jonathan.

33.

As a direct result of Defendant's failure to properly train and supervise Errol Wilkins, and other employees, Jonathan sustained injuries from which he did then suffer, now suffers, and will continue to suffer great pain of body and mind. Additionally, Jonathan has sustained special damages in the nature of medical bills in an amount no less than $1,000.

**COUNT TWO**
**DEFENDANTS' JOINT NEGLIGENT RETENTION OF AN EMPLOYEE and**
**AGENT/SERVANT – ERROL WILKINS**

34.

Plaintiffs hereby adopt and allege all preceding and succeeding paragraphs herein as this paragraph.

35.

Defendants negligently retained Errol Wilkins as an employee despite having knowledge of his failure to treat Jonathan and other clients of Gateway humanely.

36.

Defendants negligently retained Errol Wilkins as an employee despite having knowledge of his intentional physical and mental abuse of Jonathan and other clients of Gateway.

37.

Defendants negligently retained Errol Wilkins as an employee despite having knowledge of his intentional failure to provide a safe and secure environment for Jonathan and other clients of Gateway.

38.

Defendants negligently retained Errol Wilkins as an employee and agent despite having knowledge of his blatant breach of their contract, of which Jonathan is a third party beneficiary, and their individual policies.

39.

Defendants negligently retained Errol Wilkins as an employee and agent despite having knowledge of his blatant breach of their contract and each's own policies by treating Jonathan and other clients inhumanely.

40.

Defendants negligently retained Errol Wilkins as an employee and agent despite having knowledge of his blatant breach of their contract and each's own policies by physically mentally abusing Jonathan and other clients.

40a.

Defendants negligently retained Errol Wilkins as an employee and agent and allowed him to have contact with defenseless people such as Jonathan despite having knowledge of Errol Wilkins' criminal history which involved the following:

i.      Arrested for Robbery

ii.     2nd Arrest for Robbery

iii.    Arrested for Armed Robbery

iv.     Arrested for Battery

41.

As a result of Defendants' joint negligent retention of Errol Wilkins as an employee and agent who breached their contract and each's own policies, Jonathan sustained injuries from which he did then suffer, now suffers, and will continue to suffer great pain of body and mind. Additionally, Jonathan has sustained special damages in the nature of medical bills in an amount no less than $1,000.

**COUNT THREE**
**NEGLIGENT BREACH OF A CONTRACT**

42.

Plaintiffs hereby adopt and allege all preceding and succeeding paragraphs herein as this paragraph.

43.

Defendants had a contract with one another, of which Jonathan is a third party beneficiary, to provide Jonathan with:

a.      A safe and secure environment;

b.      Humane treatment;

c.      Self worth and dignity; and

d.      High quality customer service focused on outcomes of improved health.

44.

Defendants jointly breached their contract and each's own policies in the following manners:

a.      In failing to maintain a safe and secure environment by allowing Jonathan to be subject to the inhumane treatment of Errol Wilkins and other employees and staff;

b.      In failing to treat Jonathan inhumanely by allowing him to be subject to the treatment of Errol Wilkins and other employees and staff;

c.      In failing to assist Jonathan keep his self worth and dignity by allowing Jonathan to be subject to the inhumane treatment of Errol Wilkins and other employees and staff; and

d.      In failing to maintain high quality customer service focused on outcomes of improved health for Jonathan by allowing Jonathan to be subject to the inhumane treatment of Errol Wilkins and other employees and staff.

45.

As a result of Defendants' jointly and negligently breaching their contract, of which Jonathan is a third party beneficiary, Jonathan sustained injuries from which he did then suffer, now suffers, and will continue to suffer great pain of body and mind.  Additionally, Jonathan has

sustained special damages in the nature of medical bills in an amount no less than $1,000.

## COUNT FOUR
## ASSAULT AND BATTERY by DEFENDANT STAFFING

46.

Plaintiffs hereby adopt and allege all preceding paragraphs herein as this paragraph.

47.

Defendant Staff's employee and agent, Errol Wilkins, continuously committed assault and battery upon the person of Jonathan.

48.

Defendant Staff had knowledge of Errol Wilkins' continuous assault and battery upon Jonathan.

49.

Defendant Staff allowed Errol Wilkins' continuous assault and battery to occur with impunity.

50.

As a result of Errol Wilkins' continuous assault and battery upon Jonathan, Jonathan sustained injuries from which he did then suffer, now suffers, and will continue to suffer great pain of body and mind.  Additionally, Jonathan has sustained special damages in the nature of medical bills in an amount no less than $1,000.

## COUNT FIVE
## FRAUD

51.

Plaintiffs hereby adopt and allege all preceding paragraphs herein as this paragraph.

52.

At all times pertinent to this action, Defendants had actual knowledge of Errol Wilkins'
physical and mental abuse of Jonathan.

53.

At all times pertinent to this action, Defendants took no action to protect Jonathan from
Errol Wilkins.

54.

At all times pertinent to this action, Defendants never informed Ms. Moore that Errol
Wilkins was physically and mentally abusing Jonathan.

55.

At all times pertinent to this action, Defendants never informed Law Enforcement that
Errol Wilkins was physically and mentally abusing Jonathan.

56.

When questioned by the Hinesville Police Department concerning Ms. Moore's
allegation of abuse of Jonathan at the hands of Errol Wilkins, Defendants' staff
members/employees fraudulently informed the Hinesville Police Department that they were not
aware of any abuse of Jonathan at the hands of Errol Wilkins.

57.

When questioned by Ms. Moore concerning her allegation of abuse of Jonathan at the
hands of Errol Wilkins, Defendants' staff members/employees fraudulently informed Ms. Moore
that they were not aware of any abuse of Jonathan at the hands of Errol Wilkins.

58.

Defendants, by and through their staff members/employees, made false representations to

the Hinesville Police Department and Ms. Moore.

59.

Defendants, by and through their staff members/employees, made false representations to the Hinesville Police Department and Ms. Moore intentionally with knowledge the representations were false.

60.

Defendants, by and through their staff members/employees, made false representations to the Hinesville Police Department and Ms. Moore with the intent and purpose of deceiving the Hinesville Police Department and Ms. Moore.

61.

Defendants, by and through their staff members/employees, made false representations to the Hinesville Police Department and Ms. Moore knowing that they would each rely upon the false representations.

62.

As a result of Defendants making these false representations, Errol Wilkins continued his physical and mental abuse of Jonathan and other patients of Defendants who all sustained injuries, physically and mentally thereby.

63.

As a result of Defendants' joint fraudulent actions and Errol Wilkins' continuous assault and battery upon Jonathan, Jonathan sustained injuries from which he did then suffer, now suffers, and will continue to suffer great pain of body and mind.  Additionally, Jonathan has sustained special damages in the nature of medical bills in an amount no less than $1,000.

**WHEREFORE,** plaintiff prays for the following:

a.      That summons be issued requiring Defendants to be served as provided by law and requiring Defendants to answer the complaint;

b.      That Plaintiffs have a trial by a fair and impartial jury of twelve members;

c.      That Plaintiffs obtain an award of damages from Defendant jointly and severally in an amount to properly compensate Plaintiffs for their general damages (past, present, and future) and special damages;

d.      That Plaintiffs obtain a punitive award against the Defendant jointly and severally to deter Defendants from repeating said actions in the future;

e.      That the costs of bringing this action, attorney's fees, and litigation costs be taxed against the Defendants jointly and severally;

f.      And that Plaintiffs have such other and further relief as this Court shall deem just and equitable.

                                        **THE WHITE LAW GROUP**
                                        /s/ Derek J. White
                                        DEREK J. WHITE
                                        Ga. Bar No. 753291
                                        Counsel for the plaintiff

P.O. Box 787
Pooler, GA 31322
(912)330-9733
(912)330-9755(f)



# FLOWERS & GASKIN, ATTORNEYS AT LAW, P.C.

JOHNATHAN C. GASKIN, ATTORNEY

POST OFFICE BOX 618 (31310)
209 EAST COURT STREET
HINESVILLE, GA (31313)
(912) 876-2181   FAX (912) 876-2208

January 5, 2022

**Hiscox Claims Center**
5 Concourse Parkway
Suite #2150
Atlanta, GA 30328.
       Via: UPS Overnight Delivery

Hiscox Insurance Company
**ATTN: Kevin Kerridge. CEO Hiscox**
5 Concourse Parkway
Suite #2150
Atlanta, GA 30328.
       Via: UPS Overnight delivery and Electronic Mail to:
       Kevin.Kerridge@Hiscox.com

Hiscox Insurance Company
**ATTN: Ed Sanchez; SVP HUC**
5 Concourse Parkway
Suite #2150
Atlanta, GA 30328.
       Via:  UPS overnight delivery and electric Mail Delivery to:
       Ed.Sanchez@Hiscox.com

Hiscox Insurance Company
**ATTN: Mike Maio, Vice President:**
5 Concourse Parkway
Suite #2150
Atlanta, GA 30328.
       Via: UPS Overnight delivery and Electronic Mail to:
       Michael.Maio@Hiscox.com

Hiscox Insurance Company
**ATTN: Jonathan Holmes, Regional Lead:**
5 Concourse Parkway
Suite #2150
Atlanta, GA 30328.
       Via: UPS Overnight delivery and Electronic Mail to:
       Jonathan.Holmes@Hiscox.com

PLAINTIFF'S EXHIBIT 5

Hiscox Insurance Company
**ATTN: Jared Gamm, Assoc. Claims Counsel, Hiscox**
5 Concourse Parkway
Suite #2150
Atlanta, GA 30328.

                    VIA: UPS Overnight delivery and Electronic Mail to:
                    Jared.Gamm@Hiscox.com

RE:    **NOTICE OF JUDGMENT AND DEMAND LETTER**

        *Cheryl Edenfield as Mother and Legal Guardian of Quincy Edenfield*
        *Vs. Healthcare Staffing, Inc.,*
        In the State Court of Liberty County, Civil Action No.: STSV2017000102

        *Sadie Edwards as natural Mother and Legal Guardian of Adam Edwards*
        *vs. Healthcare Staffing, Inc.*
        State Court of Liberty County, GA Civil Action No.: STSV2018000028

        *Catherine Moore as Natural Mother and Legal Guardian of Jonathan Moore*
        *vs. Healthcare Staffing, Inc.*
        State Court of Liberty County, GA Civil Action No.: STSV2018000030

Dear Hiscox Claims Department, Mr. Kerridge CEO, Mr. Sanchez, Mr. Maio VP, Mr. Holmes and Mr. Gamm:

      By now I am sure you have received the Orders the Court entered in each case referenced above. In the event you have not, as Attorney of record, I have enclosed/attached them to this correspondence to you.

As a brief background concerning this Demand, on March 18, 2019, Mr. Derek White, Attorney filed the Certificate of Service for each Offer of Settlement that was made in each case. The offers were as follows:

        Edenfield     $1,000,000.00
        Edwards      $500,000.00
        Moore        $250,000.00

The awards by the State Court of Liberty County, Georgia in each case are as follows:

        Edenfield     $5,000,000.00
        Edwards      $5,000,000.00
        Moore        $1,000,000.00

Hence, pursuant to OCGA §9-11-68, as insurer (Hiscox) is liable for the amount of each award plus attorney fees and cost of litigations. The amount of attorney's fees and costs will be no less than **Four Hundred Thousand ($400,000.00) Dollars**.

We expect that Hiscox may desire to file a Declaratory Action (DA) in these cases. It is our position that such a maneuver would be frivolous and an undertaking to only unnecessarily expand litigation.

As Insurer, Hiscox was required to file a DA once it denied liability coverage on December 18, 2017. Hiscox specifically and in no uncertain terms informed Ms. Matthews of Health Care Staffing (your insured hereinafter "HCS") that "Hiscox must respectfully advise you that there is no coverage available for HCS under the Hiscox Policy." This decision was made under the flawed belief that the exclusions contained in the policy voided any coverage. Particularly, Hiscox relied upon Exclusion E.9979.1 CGL - Abuse or Molestation Exclusion. That exclusion states:

> This insurance does not apply to "bodily injury," . . . of "personal injury" arising out of:
>
> (a)   The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> (b)   the negligent:
>
>> (i)     employment;
>> (ii)    investigation;
>> (iii)   supervision;
>> (iv)   reporting to the proper authorities, or failure to so report; or
>> (v)    retention;
>
> Of a person for whom any insured is or ever was legally responsible and whose conducted would be excluded by (a) above.

First, each Order entered in the cases specifically found that each Plaintiff (victim of Errol Wilkins) was under the "custody, control, and care of Gateway at all times in this case. At no time did Defendant (HCS) have the responsibility to provide for the custody, control and care of Quincy (Adam and Jonathan)." Thus, subparagraph "a" does not apply.

Even if subparagraph "a" did apply, the Orders specifically found that the damages sustained by each victim was "a direct result of Defendant's negligent training and negligent placement/assignment of Errol Wilkins. Thus, none of these claims are excluded in subparagraph "b."

Hence, Hiscox mistakenly informed HCS that coverage was not available for these claims.

Secondly, it is too late to seek relief from the Courts in the nature of a DA. OCGA §9-4-1 reads:

> The purpose of this chapter is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and this chapter is to be liberally construed and administered.

Case law is replete with explanations as to the meaning of OCGA §9-4-1. First are the requirements for a party seeking a DA. In *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 218-219, 231 S.E.2d 245, 248 (1976) the Court held:

> Upon discovery or notice of facts possibly constituting grounds of noncoverage the insurance company may seek to enter into a bilateral reservation of rights agreement with its insured. Should the insured refuse to consent to the bilateral agreement an insurer may avoid the sharp horns of the dilemma presented by such refusal by giving the insured a timely unilateral notice of its reservation and nonwaiver of rights. This should include notice of its intention to seek immediate declaratory relief.

It is clear from the December 18, 2017 decline letter, Hiscox did not inform HCS of its intention to seek declaratory relief. In fact, it has been over four years and Hiscox has never sought declaratory relief. Thus, without ever seeking court intervention, Hiscox is barred from doing so now. See *United Specialty Ins. Co. v. Cardona-Rodriguez*, 352 Ga. App. 299, 302-304, 835 S.E.2d 1, 4-5 (2019) which held:

> "The purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." (Punctuation omitted.) *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109 (586 SE2d 228) (2003), citing OCGA § 9-4-1.
>
> However, where the rights of the parties have already accrued and there are no circumstances showing any necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of *some future act or conduct*, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest, the plaintiff is not entitled to a declaratory judgment. *The declaratory judgment action makes no provision for a judgment which is advisory.* (Citation and punctuation omitted.) *Morgan v. Guar. Nat. Cos.*, 268 Ga. 343, 344 (489 SE2d 803) (1997). *In this regard, "[d]eclaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act - as where an insurance company has already denied a claim."* (Citation and punctuation omitted.) *Id.* at 345. See also *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 17 (413 SE2d 450) (1992).
>
> In this case, even though United asserted that it was providing a defense for Lewis under a reservation of rights, it unequivocally rejected Rodriguez's $100,000

demand for payment under the policy and offered him $25,000. The reservation of rights letter did not assert that United was uncertain as to its rights or the policy limits, or advise Lewis that it was unclear how to proceed under the policy given that Evans was operating the van without a license. Instead, United's litigation specialist unequivocally asserted that "the limits of liability coverage under [the] policy are $25,000, which is the basic financial responsibility limit required by the State of Georgia." Coverage counsel also reached out to Rodriguez and his counsel in a letter, explaining the deficiencies in Rodriguez's demand letter and unequivocally denying Rodriguez's demand under the policy stating that United "had no legal duty to respond, much less correct or negotiate, to [Rodriguez's] Demand Letter when the demand exceeded the policy limits." This letter *never stated that United was uncertain about how to proceed* given that Evans was an unlicensed driver. Nor did United state it would reconsider its position if additional information was provided to it. See *Colonial Ins. Co. of California v. Progressive Cas. Ins. Co.*, 252 Ga. App. 391, 392 (1) (556 SE2d 486) (2001) (insurer not estopped from seeking declaratory judgment where insurer's letter of denial indicated that it would reconsider its position if the insured disagreed and/or could provide additional information "that may have a bearing on" the coverage issue). See also *Drawdy*, 277 Ga. at 109 ("insurer is not estopped from changing its position after an initial denial of coverage and is allowed to seek declaratory judgment in those situations where the insurer has both indicated its willingness to reconsider its insured's claim and has *positively demonstrated* that it considers the question of coverage to still be in issue") (emphasis supplied). United continued to endorse its position in its petition for declaratory judgment, asserting unequivocally that because the accident involved the operation of an automobile by someone without a valid driver's license, "[t]he basic financial responsibility limit required by Georgia is $25,000." And, "[t]he maximum limit afforded by the [p]olicy for the accident ... is $25,000." *Had United indicated in any of its correspondence with Lewis and/or Rodriguez that it was uncertain as to its obligation under the policy*, our decision might be different. On the contrary, United has asserted all along - with absolute certainty - that coverage under the policy was limited to $25,000.

*The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated*. As many times pointed out by this [C]ourt, its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light before he steps *rather than after he has stepped in a hole*. (Citations and punctuation omitted; emphasis in original.) *Chastain v. U. S. Fidelity & Guar. Co.*, 190 Ga. App. 215, 216-217 (378 SE2d 397) (1989). (Emphasis added.)

Thus, as Hiscox was unequivocally in its denial of coverage, did not inform HCS of a desire to seek declaratory relief, never change its mind concerning coverage, there is no future controversy to be determined, and HCS has been prejudiced by Hiscox's denial, Hiscox is not entitled to avail itself of Court intervention to determine its rights or defenses under the subject insurance policy. Please see the following cases for additional support of our position:

1.  *Barclay v. Stephenson*, 337 Ga. App. 365, 371, 787 S.E.2d 322, 328 (2016)

    It is true that an insurer cannot deny coverage, then seek a declaratory judgment as to rights and responsibilities under its policy.

2.  *Rowan v. Herring*, 214 Ga. 370, 105 S.E.2d 29, 1958 Ga. LEXIS 429 (1958); *Georgia Power Co. v. City of Cedartown*, 116 Ga. App. 596, 158 S.E.2d 475, 1967 Ga. App. LEXIS 902 (1967); *Sapp v. ABC Credit & Inv. Co.*, 243 Ga. 151, 253 S.E.2d 82, 1979 Ga. LEXIS 840 (1979); *Slaughter v. Faust*, 155 Ga. App. 68, 270 S.E.2d 218, 1980 Ga. App. LEXIS 2461 (1980).

    Purpose of the provisions on declaratory judgment is to permit one who is walking in the dark to ascertain where one is and where one is going, to turn on the light before one steps rather than after one has stepped in a hole.

3.  *Quarries Corp. v. Davidson,* 79 Ga. App. 248, 53 S.E.2d 231 (1949)

    It is a basic rule of declaratory judgment law that, when it will be necessary to bring another action or proceeding to settle the controversy, a declaratory judgment will not be granted.

4.  *Pendleton v. City of Atlanta*, 236 Ga. 479, 224 S.E.2d 357 (1976)

    Purpose of the declaratory judgment provisions are not to delay the trial of cases of actual controversy but to guide and protect the parties from uncertainty and insecurity with respect to the propriety of some future act or conduct in order not to jeopardize their interest. (See *Cohen v. Reisman*, 203 Ga. 684, 48 S.E.2d 113, (1948) and *Plantation Pipe Line Co. v. Milford*, 257 Ga. App. 709, 572 S.E.2d 67, (2002)).

5.  *Jahncke Serv., Inc. v. Department of Transp.*, 134 Ga. App. 106, 213 S.E.2d 150 (1975)

    Provisions on declaratory judgment permit a person to seek direction from the courts without having to make a decision which without such direction might reasonably jeopardize a person's interest.

6.  *Peeples Indus., Inc. v. Parker Hannifin Corp.*, 189 Ga. App. 857, 377 S.E.2d 691 (1989)

    Declaratory judgment law is not intended to be used to set aside, modify, or interpret judicial decrees or judgments of courts having jurisdiction of the subject matter and parties, but is to be used to obtain a declaration of rights not already adjudicated. *Lawrence v. Lawrence*, 87 Ga. App. 150, 73 S.E.2d 231, 1952 Ga. App. LEXIS 633 (1952); *Burgess v. Burgess*, 210 Ga. 380, 80 S.E.2d 280, 1954 Ga. LEXIS 314 (1954)

7.  *Builders Ins. Group, Inc. v. Ker-Wil Enters.*, 274 Ga. App. 522, 618 S.E.2d 160 (2005)

Declaratory judgment was not available to the insurer in a case when the insurer denied that the insured was responsible for providing coverage because there was no future act to which a declaratory judgment could be used to guide and protect the insurer.

8.   *Adler v. Adler*, 87 Ga. App. 842, 75 S.E.2d 578 (1953)

Term "actual controversy" and the terms "rights, status and other legal relations," all relate to a justiciable controversy, and a controversy is justiciable when there are interested parties asserting adverse claims upon an accrued state of facts.

9.   *State v. Hospital Auth.*, 213 Ga. 894, 102 S.E.2d 543, (1958).

Mere fact that there is a dispute as to issues of fact could not give the necessary element of "uncertainty and insecurity" to entitle a petitioner to maintain a declaratory judgment action.

10.   *Empire Fire & Marine Ins. Co. v. Metro Courier Corp.*, 234 Ga. App. 670, 507 S.E.2d 525 (1998)

Automobile liability insurer's declaratory judgment action was dismissed for mootness and lack of jurisdiction since the insurer sought to determine if the insurer was required to provide coverage in the underlying personal injury action, but although the insurer had filed the declaratory judgment action before judgment was entered in the underlying suit, the insurer already had refused coverage and refused to provide a defense for its insured in that action, thus removing any uncertain future act as the basis for determination by the court.

11.   *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109, 586 S.E.2d 228, 230 (2003)

The law is well established that "declaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act -- as where an insurance company has already denied a claim. [Cits.]" *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 18 (413 S.E.2d 450) (1992). That is because declaratory judgment is not available to a party merely to test the viability of its defenses. *Morgan v. Guaranty Nat. Co.*, 268 Ga. 343, 345 (489 S.E.2d 803) (1997). Direct General having already denied coverage for the claims at issue here, declaratory judgment was not available because it was neither uncertain nor insecure in regard to its rights, status or legal relations. See *Adams v. Atlanta Cas. Co.*, 225 Ga. App. 482 (1) (484 S.E.2d 302) (1997). See also Jenkins & Miller, Georgia Automobile Insurance Law (2001 ed.), § 9-1.

In contrast, Direct General provided its insured with an unconditional and unqualified denial of coverage. "Once the [insurer] denies coverage, insureds know that they are on their own and that they cannot rely on the insurer." 1 Allan

D. Windt, Insurance Claims & Disputes, § 2.24, p. 79 (3rd ed. 1995).
(*Id*. at pgs. 109-110).

"An insurer 'may not refuse to pay (under its policy) and then use declaratory judgment procedure as a means of avoiding bad faith penalties.' [Cit.]" Morgan, *supra*, 268 Ga. at 344. The Court of Appeals' ruling encourages insurers to unconditionally deny claims, based on the calculated risk that an uninformed insured or tort plaintiff may be discouraged thereby from contesting the issues, with the insurers secure in the knowledge that bad faith penalties for their course of conduct may be avoided or minimized by the filing of a declaratory judgment action. While the Declaratory Judgment Act is to be liberally construed and administered, O.C.G.A. § 9-4-1, and its purpose is to protect parties, *Mayor & Co. of Athens v. Gerdine*, 202 Ga. 197 (1) (42 S.E.2d 567) (1947), that protection is from uncertainty with respect to future conduct, *Id*., not from the adverse consequences of actions already undertaken.
(*Id*. at p. 110).

Finally, it is our position that Hiscox is guilty of bad faith settlement negotiations and HCS has assigned its bad faith claims to Plaintiffs. Please review the *Drawdy* case cited supra.

In closing, demand is hereby made and Hiscox is liable for the following:

a.   One Million ($1,000,000.00) Dollars to each Plaintiff in each case;

b.   An additional Four Million ($4,000,000.00) Dollars for bad faith dealings to Plaintiffs Edenfield as a result of putting HCS's assets in jeopardy;

c.   An additional Four Million ($4,000,000.00) Dollars for bad faith dealings to Plaintiffs Edwards as a result of putting HCS's assets in jeopardy;

d.   Offer of Settlement damages in the amount of Four Hundred Thousand ($400,000.00) Dollars to Plaintiffs' Counsel; and

e.   Any other relief allowed if litigation is frivolously prolonged.

However, we are amenable to accepting the awards in their entirety and waiving the fees and costs if these cases are resolved without delay. As these claims have been pending for over four years and we are now in the fifth year, negotiations are open for ten (10) days. After that period, conciliations will be closed. And, if we must defend these awards in any future litigation, we will seek additional attorney fees for the defense against frivolous litigation pursuant to OCGA§9-15-14.

I look forward to hearing from you in the very near future.

(Signature page follows)

Sincerely,

Johnathan C. Gaskin
Attorney for Plaintiffs
Ga Bar No.: 143084

cc:    Austin Bersinger, Esq.
Barnes & Thornburg LLP
3475 Piedmont Road N.E. Suite 1700
Atlanta, GA 30305

## IN THE STATE COURT OF LIBERTY COUNTY
## STATE OF GEORGIA

CATHERINE MOORE as Next of Kin and as      :
Legal Guardian of JONATHAN MOORE, an       :
Incapacitated Adult,                       :
                                           :
Plaintiffs.                                :
                                           :     Civil Action File No.:
v.                                         :     STSV2018000030
                                           :
HEALTHCARE STAFFING, INC.,                 :
                                           :
Defendant.                                 :

### ORDER

On December 20, 2021, Defendant filed a "Withdrawal of Answer and Defenses and

Consent to Entry of Default Judgment." In pertinent part, the Withdrawal reads:

> Further, Defendant consents and has no objection to the Plaintiff having an
> uncontested evidentiary hearing without a jury as it pertains to Plaintiff's damages
> suffered as a result of the underlying accident, being the subject matter of
> Plaintiff's Complaint.

On Wednesday, December 29, 2021, Plaintiff presented evidence in the nature of live

testimony and documents.

A.      Live testimony presented

Jonathan Moore, a highly autistic and disabled adult, was under the custody, control, and

care of Gateway at all times in this case. At no time did Defendant have the responsibility to

provide for the custody, control, and care of Jonathan Moore. Defendant simply provided staff

members to Gateway.

Errol Wilkins was an employee of Defendant and was placed/assigned at Gateway as a

staff member. While on Gateway's premises, Errol had encounters with Jonathan. He would hit

1



Jonathan with his hands, fists, and a wooden arm from a rocking chair. This went on for several months.

As a result of the encounters with Errol, testimony was that Jonathan sustained severe injuries, both mentally and physically, in the past and which will continue into the future.

B.  Documents presented revealed

Although Defendant's withdrawal of its Answers and all Defenses is an admission of the allegations of the Complaints by operation of law, Plaintiff presented the following evidence in support of the allegations:

1.  The Criminal history of Errol Wilkins which shows a conviction for Robbery and, at a minimum, charges for Armed Robbery, a different Robbery, and a Battery;

2.  The State of Georgia Department of Behavioral Health and Developmental Disabilities' (DBHDD) inquiry as Errol Wilkins' criminal history indicated his criminal history was "a list of incomplete charge information or a summary of the applicant's arrest and other disposition data that was indicated on their criminal history record.;"

3.  DBHDD's regulation which disqualified Errol Wilkins to be staffed with Gateway where he encountered Quincy (Criminal History Records Check for Contractors, 04-104(B)(1)(a)(i) - Armed Robbery and (B)(1)(a)(ii) - Other felonies);

4.  Errol Wilkins' Non-Accredited Diploma from "Cornerstone Christian Correspondence School;"

5.  The list for the State of Georgia's Accredited High Schools which begin with the name of "Cornerstone;"

6.  The requirements/skills needed for the "Social Aide" position in which Errol Wilkins was placed by Defendant;

2

7.    The Investigation Reports of Mitch Sweeney;

8.    HCS Personnel Check List;

9.    Employment Screening Service Document (06/18/14 order date);

10.    Application of Errol Wilkins and signed Applicant Statement;

11.    Indictments of Errol Wilkins;

These documents demonstrated that Defendant clearly made a business decision in placing Errol Wilkins at Gateway. Defendant had a contractual obligation to staff Gateway with Defendant's employees and placing Errol Wilkins at Gateway fulfilled this obligation for which Defendant received compensation.

As a direct result of the business decision to place Errol Wilkins at Gateway, Jonathan Moore sustained general damages consisting of mental and physical pain and suffering which Jonathan endured in the past, endures presently, and will endure in the future.

Based upon the above referenced testimony, documents, and the admitted damages as a result of Defendant's withdrawal of its Answers and Defenses,

**IT IS HEREBY ORDERED** that Plaintiff is granted a Default Judgment, as consented to by the Defendant, and by Defendant's own admission to Plaintiff's allegation as to damages and by the supporting evidence, this Court awards to the Plaintiff the sum of ONE MILLION ($1,000,000.00) DOLLARS for general damages as a direct result of Defendant's negligent training and negligent placement/assignment of Errol Wilkins.

SO ORDERED this 29th day of December, 2021.

HON. JEFFERY N. OSTEEN
State Court of Liberty County,
Georgia

Prepared by:
Johnathan C. Gaskin, Esq.
209 E. Court St., Hinesville, GA 31313
Jcgaskin12@yahoo.com
(912)876-2181

3

EXHIBIT 7 WITHHELD

Subject to Motion for Temporary Limitation of Access to Exhibit

PLAINTIFF'S
EXHIBIT
7

LIBERTY COUNTY
LINDA DIXON THOMPSON
CLERK OF SUPERIOR
COURT

RECEIPT #: 796317                5/26/2022
                                 03:53 PM

NAME: JED MANTON

TRANSACTION TYPE      R/C      AMOUNT

LIBERTY COUNTY (103)

                      R        $211.00
STATE COURT FEES (NEW CASES)
22 SV 130 HISCOX INC HISCOX INSURANCE COMPAN
Y INC LLOYDS AMERICA INC

     TOTAL DUE:                 $211.00


     CHECK #                    AMOUNT
        -1                      $211.00

   TOTAL PAYMENT:              $211.00
       BALANCE:                  $0.00


OP: DEBRA WIGGINS

# STATE COURT OF LIBERTY COUNTY
# STATE OF GEORGIA

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
**MAY 26, 2022 03:36 PM**

*Linda Dixon Thompson*
Linda Dixon Thompson, Clerk
Liberty County, Georgia

CIVIL ACTION NUMBER  STSV2022000130

MOORE, CATHERINE

_____

**PLAINTIFF**

                                **VS.**

HISCOX, INC.
HISCOX INSURANCE COMPANY INC.
LLOYD'S AMERICA, INC., DBA Certain
Underwriters at Lloyd's, London
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON

_____

**DEFENDANTS**

## SUMMONS

TO: HISCOX, INC.   Via its registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Jed Manton**
> **HARRIS LOWRY MANTON LLP**
> **1418 Dresden Drive NE**
> **Unit 250**
> **Brookhaven, Georgia 30319**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 26th day of May, 2022.**

                             Clerk of State Court

                      *Linda Dixon Thompson*
                      Linda Dixon Thompson, Clerk
                      Liberty County, Georgia

# STATE COURT OF LIBERTY COUNTY
# STATE OF GEORGIA

⚖ **EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
**JO**
**MAY 26, 2022 03:36 PM**

*Linda Dixon Thompson*
Linda Dixon Thompson, Clerk
Liberty County, Georgia

CIVIL ACTION NUMBER  STSV2022000130

MOORE, CATHERINE

_____

**PLAINTIFF**

**VS.**

HISCOX, INC.
HISCOX INSURANCE COMPANY INC.
LLOYD'S AMERICA, INC., DBA Certain
Underwriters at Lloyd's, London
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON

_____

**DEFENDANTS**

## SUMMONS

TO: HISCOX INSURANCE COMPANY INC.   via its registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Jed Manton**
> **HARRIS LOWRY MANTON LLP**
> **1418 Dresden Drive NE**
> **Unit 250**
> **Brookhaven, Georgia 30319**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 26th day of May, 2022.**

Clerk of State Court

*Linda Dixon Thompson*
_____
Linda Dixon Thompson, Clerk
Liberty County, Georgia

# STATE COURT OF LIBERTY COUNTY
# STATE OF GEORGIA

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
MAY 26, 2022 03:36 PM

Linda Dixon Thompson, Clerk
Liberty County, Georgia

CIVIL ACTION NUMBER  STSV2022000130

MOORE, CATHERINE

_____

**PLAINTIFF**

                                    **VS.**

HISCOX, INC.
HISCOX INSURANCE COMPANY INC.
LLOYD'S AMERICA, INC., DBA Certain
Underwriters at Lloyd's, London
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON

_____

**DEFENDANTS**

### SUMMONS

TO: LLOYD'S AMERICA, INC.   via its registered agent for service of process, CT Corporation System, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia 30046

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Jed Manton**
> **HARRIS LOWRY MANTON LLP**
> **1418 Dresden Drive NE**
> **Unit 250**
> **Brookhaven, Georgia 30319**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 26th day of May, 2022.**

Clerk of State Court

Linda Dixon Thompson, Clerk
Liberty County, Georgia

# STATE COURT OF LIBERTY COUNTY
# STATE OF GEORGIA

⚡ **EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
MAY 26, 2022 03:36 PM

*Linda Dixon Thompson*
Linda Dixon Thompson, Clerk
Liberty County, Georgia

CIVIL ACTION NUMBER  <u>STSV2022000130</u>

MOORE, CATHERINE

_____

**PLAINTIFF**

                                  **VS.**

HISCOX, INC.
HISCOX INSURANCE COMPANY INC.
LLOYD'S AMERICA, INC., DBA Certain
Underwriters at Lloyd's, London
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON

_____

**DEFENDANTS**

**SUMMONS**

TO: CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

        **Jed Manton**
        **HARRIS LOWRY MANTON LLP**
        **1418 Dresden Drive NE**
        **Unit 250**
        **Brookhaven, Georgia 30319**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 26th day of May, 2022.**

                    Clerk of State Court

*Linda Dixon Thompson*
                Linda Dixon Thompson, Clerk
                Liberty County, Georgia

en

**General Civil and Domestic Relations Case Filing Information Form**

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**

**MAY 26, 2022 03:36 PM**

☐ **Superior** or ☑ **State Court of** _Liberty_____ **County**

| | |
|---|---|
| **For Clerk Use Only** | |
| **Date Filed** 05-26-2022_____ <br> **MM-DD-YYYY** | **Case Number** STSV2022000130_____ |

*Linda Dixon Thompson, Clerk*
*Liberty County, Georgia*

| **Plaintiff(s)** | **Defendant(s)** |
|---|---|
| MOORE, CATHERINE | HISCOX, INC. |
| Last    First    Middle I.    Suffix    Prefix | Last    First    Middle I.    Suffix    Prefix |
| | HISCOX INSURANCE COMPANY INC. |
| Last    First    Middle I.    Suffix    Prefix | Last    First    Middle I.    Suffix    Prefix |
| | LLOYD'S AMERICA, INC. |
| Last    First    Middle I.    Suffix    Prefix | Last    First    Middle I.    Suffix    Prefix |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON |
| Last    First    Middle I.    Suffix    Prefix | Last    First    Middle I.    Suffix    Prefix |

**Plaintiff's Attorney** _Manton, Jed_____    **Bar Number** _868587_____    **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**
- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contract**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Garnishment**
- ☑ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**
- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☑ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_STSV2018000030_____    _____
**Case Number**              **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____

_____

Version 1.1.20

**EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
**JO**
**MAY 26, 2022 04:24 PM**

Linda Dixon Thompson, Clerk
Liberty County, Georgia

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

CATHERINE MOORE, as legal guardian and
next friend of JONATHAN MOORE,

       Plaintiff,

v.

HISCOX, INC., HISCOX INSURANCE
COMPANY INC., LLOYD'S AMERICA, INC.,
d/b/a Certain Underwriters at Lloyd's, London,
and CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON,

      Defendants.

Civil Action File No.
STSV2022000130

## MOTION FOR APPOINTMENT OF
## DIAL SERVICES TO SERVE PROCESS

**COMES NOW** Plaintiff and files this Motion pursuant to O.C.G.A § 9-11-4 and moves

the Court for an Order authorizing STEVE BASHAM of Dial Services, Inc., as a citizen of the

United States, to serve a copy of the Complaint and Summonses in this case on Defendants

HISCOX, INC., HISCOX INSURANCE COMPANY INC., and LLOYD'S AMERICA, INC.,

d/b/a Certain Underwriters at Lloyd's, London, on the grounds that STEVE BASHAM, of Dial

Services, Inc., is not registered as a process server in Liberty County State Court, as is more fully

shown in the Affidavit attached hereto.

This the 26th day of May, 2022.

**HARRIS LOWRY MANTON LLP**

/s/ Jed D. Manton
JEFFREY R. HARRIS
Georgia Bar No. 330315
JED D. MANTON
Georgia Bar No. 868587
YVONNE S. GODFREY
Georgia Bar No. 318567

MADELINE E. McNEELEY
Georgia Bar No. 460652

1418 Dresden Dr. NE, Unit 250
Brookhaven, GA 30319
(404) 961-7650 (t)
(404) 961-7651 (f)
jeff@hlmlawfirm.com
jed@hlmlawfirm.com
yvonne@hlmlawfirm.com
molly@hlmlawfirm.com

*Attorneys for Plaintiffs*

## AFFIDAVIT

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, came Jed D. Manton, who, after first being duly sworn, states as follows:

1.       I, Jed D. Manton, being over 18 years of age, am duly licensed to practice law in the state of Georgia.

2.       I am attorney of record in the foregoing action of *CATHERINE MOORE, as legal guardian and next friend of JONATHAN MOORE v HISCOX, INC., HISCOX INSURANCE COMPANY INC., LLOYD'S AMERICA, INC., d/b/a Certain Underwriters at Lloyd's, London, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,* filed on May 26, 2022 in Liberty County, Georgia; civil action number STSV2022000130.

3.       A Summons and Complaint was filed with the Clerk of the State Court of Liberty County, Georgia.

4.       Defendant Hiscox, Inc. may be served with process by delivering a Summons and copy of the Complaint to its registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.  Hiscox, Inc. is subject to jurisdiction and venue in this Court.

5.       Defendant Hiscox Insurance Company Inc. may be served with process by delivering a Summons and copy of the Complaint to its registered agent for service of process, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092.  Hiscox Insurance Company Inc. is subject to jurisdiction and venue in this Court.

6.       Defendant Lloyd's America, Inc., d/b/a Certain Underwriters at Lloyd's, London may be served with process by delivering a summons and copy of the Complaint to its registered agent, CT Corporation System, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia

30046.  Lloyd's America, Inc., d/b/a Certain Underwriters at Lloyd's, London is subject to jurisdiction and venue in this Court.

      7.     The present civil action was filed on May 26, 2022.

      8.     To ensure that due diligence is exercised in attempting to effectuate proper service of the Summons and Complaint upon the above identified Defendants, Plaintiff wishes to retain STEVE BASHAM, an individual over the age of 18 years, to serve process upon said Defendants.

      9.     I believe that STEVE BASHAM will be able to effectuate service upon said Defendants, in a timely manner, as prescribed by Georgia Law.

      This 26th day of May, 2022.

                                      Jed D. Manton

Sworn to and subscribed before me

This 26 day of May, 2022.

Notary Public
My commission expires May 9, 2026

**EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
**MAY 27, 2022 10:49 AM**

Linda Dixon Thompson, Clerk
Liberty County, Georgia

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

CATHERINE MOORE, as legal guardian and
next friend of JONATHAN MOORE,

    Plaintiff,

v.

HISCOX, INC., HISCOX INSURANCE
COMPANY INC., LLOYD'S AMERICA, INC.,
d/b/a Certain Underwriters at Lloyd's, London,
and CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON,

    Defendants.

Civil Action File No.
STSV2022000130

## ORDER

The Motion for Appointment of Dial Services having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

IT IS HEREBY ORDERED that Steve Basham of Dial Services, Inc., is hereby specially appointed by the Court to serve process and said Steve Basham is hereby authorized to personally serve Defendants, with a copy of the Complaint and Summonses in this action.

This 26th day of May, 2022.

_____
Hon. Jeff Osteen
State Court of Liberty County

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

📧 **EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA
**STSV2022000130**
JO
MAY 27, 2022 04:32 PM

*Linda Dixon Thompson*
Linda Dixon Thompson, Clerk
Liberty County, Georgia

CATHERINE MOORE, as legal guardian and
Next friend of JONATHAN MOORE,

  **PLAINTIFF'S,**

VS.

HISCOX, INC., HISCOX INSURANCE
COMPANY INC., LLOYD'S AMERICA, INC.,
d/b/a Certain Underwriters at Lloyd's
London, and CERTAIN UNDERWRITERS AT
LLOYD'S LONDON,

  **DEFENDANT'S.**

**CASE #: STSV2022000130**

STATE OF GEORGIA
WALTON COUNTY

### AFFIDAVIT OF SERVICE

  Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Steven Basham, a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

  On **May 27, 2022,** at approximately **1:23 P.M., HISCOX, INC.,** Defendant in the above referenced matter, was served with the Summons and Complaint. Service was perfected on P. Diane Beams, a person authorized to accept service for Corporation Service Company, the reported Registered Agent for Hiscox, Inc. Service was perfected at 2 Sun Court Suite 400, Peachtree Corners, Georgia 30092.

Sworn to and subscribed before me
this 27th day of May 2022.

*LaDonna Gauntt*

NOTARY PUBLIC
My commission expires on 11/21/25

_____
James Basham
Affiant

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

EFILED IN OFFICE
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
MAY 27, 2022 04:32 PM

Linda Dixon Thompson, Clerk
Liberty County, Georgia

CATHERINE MOORE, as legal guardian and
Next friend of JONATHAN MOORE,

    PLAINTIFF'S,

VS.

HISCOX, INC., HISCOX INSURANCE
COMPANY INC., LLOYD'S AMERICA, INC.,
d/b/a Certain Underwriters at Lloyd's
London, and CERTAIN UNDERWRITERS AT
LLOYD'S LONDON,

    DEFENDANT'S.

CASE #: **STSV2022000130**

STATE OF GEORGIA
WALTON COUNTY

### AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Steven Basham, a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and accurate.

1.

On **May 27, 2022,** at approximately **1:23 P.M., HISCOX INSURANCE COMPANY, INC.,** Defendant in the above referenced matter, was served with the Summons and Complaint. Service was perfected on P. Diane Beams, a person authorized to accept service for Corporation Service Company, the reported Registered Agent for Hiscox Insurance Company, Inc. Service was perfected at 2 Sun Court Suite 400, Peachtree Corners, Georgia 30092.

Sworn to and subscribed before me
this 27th day of May 2022.

_____
NOTARY PUBLIC
My commission expires on 11/21/25

_____
James Basham
Affiant

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
**JO**
**MAY 31, 2022 02:11 PM**

Linda Dixon Thompson, Clerk
Liberty County, Georgia

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

CATHERINE MOORE, as legal guardian and next
friend of JONATHAN MOORE,

     Plaintiff,

v.

HISCOX, INC., HISCOX INSURANCE
COMPANY INC., LLOYD'S AMERICA, INC.,
d/b/a Certain Underwriters at Lloyd's, London, and
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

     Defendants.

Civil Action File No. STSV2022000130

## MOTION FOR TEMPORARY LIMITATION OF ACCESS TO EXHIBIT

Plaintiff moves this Court to temporarily seal for 30 days Exhibit 7 to her Complaint filed

May 26, 2022.

Exhibit 7 is a contract between HealthCare Staffing, Inc. ("HCS") and Plaintiff that assigns

to Plaintiff the right to bring certain claims against Defendants.  The contract contains a

confidentiality provision that restricts disclosure of the terms of the contract.  Plaintiff filed suit on

May 26, 2022, bringing certain claims against Defendants pursuant to the assignment.  However,

Plaintiff inadvertently filed the contract into the public record and not under seal when she attached

it as an exhibit to her Complaint.

Plaintiff respectfully requests that this Court enter an order pursuant to Uniform Superior

Court Rule 21.3 that temporarily limits access to the contract by sealing the exhibit and removing

it from the public docket for a period of 30 days.  During that time, Plaintiff's counsel will work

with HCS's counsel to agree upon redactions or other protections for the document.  An affidavit

supporting this request is attached.  Further attached for the Court's convenience are a Proposed

Order and an "Exhibit 7 Placeholder" that may be inserted into the public record in place of the temporarily sealed exhibit.

     Respectfully submitted this 31st day of May, 2022.

          **HARRIS LOWRY MANTON LLP**

          /s/ *Jed D. Manton*
          JEFFREY R. HARRIS
          Georgia Bar No. 330315
          JED D. MANTON
          Georgia Bar No. 868587
          YVONNE S. GODFREY
          Georgia Bar No. 318567
          MADELINE E. McNEELEY
          Georgia Bar No. 460652

1418 Dresden Dr. NE, Unit 250
Brookhaven, GA 30319
Telephone: (404) 961-7650
Facsimile: (404) 961-7651

          ***Attorneys for Plaintiffs***

2

## AFFIDAVIT

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, came Jed D. Manton, who, after first being duly sworn, states as follows:

1.      I, Jed D. Manton, being over 18 years of age, am duly licensed to practice law in the state of Georgia.

2.      I am attorney of record in the foregoing action of *CATHERINE MOORE, as legal guardian and next friend of JONATHAN MOORE v. HISCOX, INC., HISCOX INSURANCE COMPANY INC., LLOYD'S AMERICA, INC., d/b/a Certain Underwriters at Lloyd's, London, and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON*, filed on May 26, 2022, in the State Court of Liberty County, Georgia, Civil Action Number STSV2022000130.

3.      Plaintiff in the above action asserts claims against Defendants based upon a written assignment of claims provided to Plaintiff by HealthCare Staffing, Inc. ("HCS").

4.      To establish standing, the assignment was attached as Ex. 7 to Plaintiff's Complaint.

5.      Plaintiff's counsel recognizes that there is a confidentially provision to Ex. 7 and he failed to obtain permission to attach Ex. 7 or a redacted substitute prior to filing the action.

6.      Pursuant to Ga. Unif. Super. Ct. R. 21.3, Plaintiff's counsel moves for temporary limitation of access by means of sealing Exhibit 7 from public access, not to exceed 30 days.

7.      During this 30-day period, Plaintiff's counsel will work with counsel for HCS to agree to redactions to Ex. 7 or other protections requested by HCS.

This 31st day of May, 2022.

_____
Jed D. Manton

Sworn to and subscribed before me
This 31 day of May, 2022.
_____
Notary Public
My commission expires May 9, 2026

EXHIBIT 7 WITHHELD


Subject to Motion for Temporary Limitation of Access to Exhibit

**PLAINTIFF'S
EXHIBIT
7**
_____

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

CATHERINE MOORE, as legal guardian and next
friend of JONATHAN MOORE,

     Plaintiff,

v.

HISCOX, INC., HISCOX INSURANCE
COMPANY INC., LLOYD'S AMERICA, INC.,
d/b/a Certain Underwriters at Lloyd's, London, and
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

     Defendants.

Civil Action File No. STSV2022000130

## [PROPOSED] ORDER

This matter is before the Court on Plaintiffs' Motion for Temporary Limitation of Access

to Exhibit. Upon review of the Motion and for cause shown,

IT IS HEREBY ORDERED that the Motion is GRANTED.  The Clerk of Court is directed

to SEAL Exhibit 7 to Plaintiff's Complaint, which was filed on May 26, 2022, and not to allow

public access to same by any means, including by review of the paper file, by electronic access

through PeachCourt, or by any other means.  The Clerk shall REMOVE said Exhibit from the

public docket and REPLACE it with the "Exhibit 7 Placeholder" attached to Plaintiff's Motion.

This Order shall remain in place for a period of 30 days.

SO ORDERED this ___ day of _____, 2022.

 

                               _____

                               Hon. Jeff Osteen
                               State Court of Liberty County

EFILED IN OFFICE
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
MAY 31, 2022 03:53 PM

Linda Dixon Thompson, Clerk
Liberty County, Georgia

IN THE STATE COURT OF LIBERTY COUNTY
STATE OF GEORGIA

CATHERINE MOORE, as legal guardian and next
friend of JONATHAN MOORE,

     Plaintiff,

v.

HISCOX, INC., HISCOX INSURANCE
COMPANY INC., LLOYD'S AMERICA, INC.,
d/b/a Certain Underwriters at Lloyd's, London, and
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,

     Defendants.

Civil Action File No. STSV2022000130

## <u>ORDER</u>

This matter is before the Court on Plaintiffs' Motion for Temporary Limitation of Access
to Exhibit. Upon review of the Motion and for cause shown,

IT IS HEREBY ORDERED that the Motion is GRANTED.  The Clerk of Court is directed
to SEAL Exhibit 7 to Plaintiff's Complaint, which was filed on May 26, 2022, and not to allow
public access to same by any means, including by review of the paper file, by electronic access
through PeachCourt, or by any other means.  The Clerk shall REMOVE said Exhibit from the
public docket and REPLACE it with the "Exhibit 7 Placeholder" attached to Plaintiff's Motion.
This Order shall remain in place for a period of 30 days.

SO ORDERED this 31st day of  May , 2022.

                Hon. Jeff Osteen
                State Court of Liberty County

**EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
**JUN 13, 2022 03:35 PM**

*Linda Dixon Thompson*
Linda Dixon Thompson, Clerk
Liberty County, Georgia

## IN THE COURT OF LIBERTY COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| CATHERINE MOORE, as legal guardian and next friend of JONATHAN MOORE, <br><br>     Plaintiff, <br><br> v. <br><br> HISCOX, INC., HISCOX INSURANCE COMPANY INC., LLOYD'S AMERICA, INC. d/b/a Certain Underwriters at Lloyd's, London, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON, <br><br>     Defendants. | Civil Action File No.: STSV2022000130 |

## ACKNOWLEDGMENT OF SERVICE

Defendant Certain Underwriters at Lloyd's, London, by and through their undersigned counsel, hereby acknowledge service of Summons and Complaint in this matter, waiving all other formal requirements for service. Said Defendants' time to file responsive pleadings shall be July 7, 2022. All defenses, except service of process, are preserved.

This 13th day of June, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

Lee D. Whatling
Georgia Bar No. 689717
lwhatling@fmglaw.com
*Attorneys for Defendant*
*Certain Underwriters at Lloyd's, London*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
678-996-9090 (direct)
770-937-9960 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **ACKNOWLEDGEMENT OF SERVICE** to the Clerk of Court using the *PeachCourt* system which will automatically send electronic mail notification of such filing to the following counsel of record:

Jed D. Manton
Yvonne S. Godfrey
Madeline E. McNeeley
Harris Lowry Manton LLP
1418 Dresden Drive, NE, Unit 250
Brookhaven, GA 30319

Derek J. White
The White Law Group
P.O. Box 787
Pooler, GA 31322

This 13th day of June, 2022.

/s/ *Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836

*Attorney for Defendant*
*Certain Underwriters at Lloyd's,*
*London*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
678-996-9090 (direct)
770-937-9960 (fax)

3

**EFILED IN OFFICE**
CLERK OF STATE COURT
LIBERTY COUNTY, GEORGIA

**STSV2022000130**
JO
**JUN 13, 2022 03:40 PM**

Linda Dixon Thompson, Clerk
Liberty County, Georgia

**IN THE COURT OF LIBERTY COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| CATHERINE MOORE, as legal guardian and next friend of JONATHAN MOORE, <br><br>     Plaintiff, <br><br> v. <br><br> HISCOX, INC., HISCOX INSURANCE COMPANY INC., LLOYD'S AMERICA, INC. d/b/a Certain Underwriters at Lloyd's, London, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON, <br><br>     Defendants. | Civil Action File No.: STSV2022000130 |

## <u>ACKNOWLEDGMENT OF SERVICE</u>

Defendant Certain Underwriters at Lloyd's, London, by and through their undersigned counsel, hereby acknowledge service of Summons and Complaint in this matter, waiving all other formal requirements for service. Said Defendants' time to file responsive pleadings shall be July 7, 2022. All defenses, except service of process, are preserved.

This 13th day of June, 2022.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

Lee D. Whatling
Georgia Bar No. 689717
lwhatling@fmglaw.com
*Attorneys for Defendant*
*Certain Underwriters at Lloyd's, London*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
678-996-9090 (direct)
770-937-9960 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **ACKNOWLEDGEMENT OF SERVICE** to the Clerk of Court using the *PeachCourt* system which will automatically send electronic mail notification of such filing to the following counsel of record:

Jed D. Manton
Yvonne S. Godfrey
Madeline E. McNeeley
Harris Lowry Manton LLP
1418 Dresden Drive, NE, Unit 250
Brookhaven, GA 30319

Derek J. White
The White Law Group
P.O. Box 787
Pooler, GA 31322

This 13th day of June, 2022.

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836

*Attorney for Defendant*
*Certain Underwriters at Lloyd's,*
*London*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
678-996-9090 (direct)
770-937-9960 (fax)